■ In the Matter of EDMUND L. SLAKTER, Petitioner, v BARBARA DEBUONO, as Commissioner of the New York State Department of Health, et al., Respondents. [694 NYS2d 496] —Peters, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, a licensed physician since 1958 specializing in the practice of psychiatry, challenges a determination of a Hearing Committee (hereinafter the Committee) of the State Board for Professional Medical Conduct (hereinafter the Board) which found him guilty of eight specifications of professional misconduct, seven of which related to petitioner's treatment of one patient (hereinafter patient A). The remaining charge arose out of his conduct in connection with his role as faculty advisor to a fourth-year resident physician (hereinafter resident B) at the Mount Sinai School of Medicine.

Patient A, a 28-year-old woman who first consulted petitioner in August 1994, testified that she attended two consecutive 45-

minute psychotherapy sessions with petitioner in his office twice weekly which initially proved beneficial. In the fall of 1994, however, petitioner began to end each session with a hug, at least one of which involved him pressing her against his groin. On yet another occasion, in addition to the hug, patient A testified that petitioner kissed her goodbye on the lips. He subsequently began to give her neck and shoulder massages and by January 1995, was helping her to remove her shirt and unhook her brassiere in order to facilitate the massage. On yet another occasion, patient A testified that petitioner lifted her shirt over her head, unhooked her brassiere and, after the massage, told her to turn over. Inadvertently exposing her right breast, patient A testified that when she went to conceal herself, petitioner told her not to be self-conscious because she was beautiful. At her last session, patient A testified that as petitioner was massaging her back, he pulled her slacks and underpants down to her ankles. Seeing that she was upset, petitioner counseled that if she exposed herself to him physically, it would help her to expose herself emotionally. Patient A described these incidents to both her friend and her mother. Her mother and stepfather testified at trial and described petitioner's reaction when they confronted him on the telephone.

Petitioner admitted to hugging and massaging patient A and conceded that his conduct was inappropriate within the context of the psychiatrist-patient relationship. He insisted that his intent had been therapeutic and denied ever removing patient A's blouse or any other article of her clothing. Both Warren Brown, a board-certified practicing psychiatrist who testified on behalf of the Bureau for Professional Medical Conduct, as well as petitioner's expert, Henry Weinstein, the psychiatrist with whom petitioner began treatment in November 1995, agreed that petitioner's behavior constituted a gross deviation from acceptable standards of proper medical and psychiatric practice. Brown further testified that upon his independent review of all documents, petitioner's records of patient A's treatment were inadequate by failing to contain a diagnosis or plan of treatment.

Resident B was assigned petitioner as her psychotherapy advisor from July 1994 through June 1995. She testified that in 1994, at the conclusion of a supervisory session, petitioner hugged her. She recognized that petitioner's conduct was inappropriate and was advised by a fellow resident to report the incident. Declining to do so, she continued to attend supervisory sessions. During a subsequent session, however, petitioner

sought information which she believed exceeded appropriate boundaries. Thereafter, she avoided scheduling her requisite supervisory sessions and eventually confronted petitioner in June 1995 about his questioning. Although petitioner apologized, she testified that he hugged her and kissed her on the right side of the neck when she got up to leave. Immediately returning to the hospital, she disclosed petitioner's behavior to Andrew Aronson, the director of adult outpatient psychiatric services.

Aronson testified at the hearing and confirmed resident B's disclosure and his receipt of her written report of the incident. Aronson, along with others, confronted petitioner who admitted to the physical contact with resident B but insisted that it was done in an empathetic manner. He was instructed not to have any physical contact, other than a handshake, with any resident he supervised. According to Aronson, the hospital committee later learned about patient A. It suspended petitioner's privileges, informed him that his actions were going to be reported to the Board and recommended that he commence psychiatric counseling. Counseling was thereafter commenced with Weinstein who opined that petitioner's behaviors were an aberration and that he was unlikely to repeat the charged acts.

Upon sustaining all eight specifications of professional misconduct after crediting the testimony of patient A and resident B, the Committee revoked petitioner's license to practice medicine. He commenced this proceeding to review the Committee's determination.

The scope of our review, in matters of this kind, is whether the determination below is supported by substantial evidence (*see, Matter of Tames v DeBuono*, 257 AD2d 784; *Matter of Gross v DeBuono*, 223 AD2d 789). We defer to credibility determinations made by the Committee unless the evidence fails to meet the requisite standard (*see, Matter of Tames v DeBuono, supra*; *Matter of Morrison v DeBuono*, 255 AD2d 710; *Matter of Gross v DeBuono, supra*). The record here reveals the direct testimony from patient A, resident B, and those to whom they made a direct report. Finding no basis to challenge the credibility determinations made by the Committee, we find substantial evidence supporting the Committee's determination of guilt.

With respect to the charge alleging a failure to maintain adequate records, 8 NYCRR 29.2 (a) (3) requires the recordation of meaningful information in the event that the patient might seek treatment from another physician (*see, Matter of Mucciolo*

*v Fernandez*, 195 AD2d 623, 625, *lv denied* 82 NY2d 661; *Matter of Suslovich v New York State Educ. Dept.*, 174 AD2d 802, 803). As expert testimony was proffered supporting the contention that patient A's records were inadequate, we find no basis upon which to disturb that determination.

Similarly without merit is petitioner's contention that he was tried for uncharged specifications of misconduct or that the zealous questioning by a Committee member constituted bias. Although we find such Committee member's questioning to have been rigorous, such questioning furthered the discovery of relevant evidence and was directed at witnesses for both sides. Having "failed to 'overcom[e] the presumption of honesty and integrity which is accorded to members of administrative bodies' " (*Matter of Kabnick v Chassin*, 223 AD2d 935, 936, *affd* 89 NY2d 828, quoting *Matter of Moss v Chassin*, 209 AD2d 889, 890, *lv denied* 85 NY2d 805, *cert denied* 516 US 861) and demonstrate "a factual basis to support the claim * * * that the outcome flowed from the alleged bias" (*id.*, at 936), we reject these contentions (*see, Matter of Sunnen v Administrative Review Bd. for Professional Med. Conduct*, 244 AD2d 790, *lv denied* 92 NY2d 802).

We have repeatedly cautioned that misconduct of a sexual nature with a patient constitutes such a fundamental violation and exploitation of trust so as to warrant a penalty of revocation (*see, Matter of Tames v DeBuono*, *supra*; *Matter of Morrisson v DeBuono*, *supra*, at 705; *Matter of Finelli v Chassin*, 206 AD2d 717, 719). Accordingly, despite petitioner's unblemished career, we decline to disturb the penalty imposed.

Mikoll, J. P., Mercure, Carpinello and Graffeo, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.