◼ In the Matter of LILLIAN GROSS, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [716 NYS2d 780] —Peters, J. Proceeding pursuant to CPLR article 78 (initi-

ated in this Court pursuant to Public Health Law § 230-c [5])
to review a determination of the Hearing Committee of the
State Board for Professional Medical Conduct which revoked
petitioner's license to practice medicine in New York.

In November 1998, the Bureau of Professional Medical
Conduct (hereinafter BPMC) served petitioner, a psychiatrist,
with a notice of hearing and a statement of charges which
detailed six specifications each of gross negligence, gross in-
competence and failure to maintain records. It also included
charges alleging that she had practiced medicine negligently
and incompetently on more than one occasion. These charges
arose from petitioner's treatment of six patients (hereinafter
referred to as patients A, B, C, D, E and F) for whom, it was
alleged, she had failed to, *inter alia*, conduct adequate
diagnostic assessments and formulate treatment plans. More-
over, she was charged with repeatedly overprescribing large
doses of potentially addictive medications despite her knowl-
edge that her patients had substance abuse histories.

At the hearing before the Hearing Committee of the State
Board for Professional Medical Conduct (hereinafter the Com-
mittee), the BPMC presented the testimony of Sigurd Acker-
man, a physician specializing in the fields of psychiatry and
neurology, who had extensive experience in the areas of
substance abuse and mood and/or personality disorders. Upon
a review of petitioner's medical records, Ackerman opined,
with respect to each and every patient, that such records failed
to detail a formulated treatment plan as well as a diagnosis
and later justification for the overprescription of medication.
Notwithstanding such recordkeeping, he opined that the
pharmacologic aspects of these patients' management posed a
serious risk, without proper justification, since petitioner
repeatedly failed to integrate their previous histories.

Petitioner, licensed to practice medicine for over 35 years,
testified in support of her treatment of these patients. Fully
acknowledging the deficiencies in her recordkeeping, she
explained that she failed to recognize that their purpose was to
inform other professionals of the nature of a patient's condition
or of the care that she provided. Believing that they were solely
for her professional use, she explained that she would only
make note of those details that would not be remembered on
either a short or long-term basis. As to each patient under
review, petitioner described her preliminary testing which as-
sisted in the formulation of her treatment plan. This included,
in numerous instances, varied therapeutic approaches includ-
ing, *inter alia*, psychotherapy and hypnosis. As to the pharma-

cologic aspects of care, she described how the medications were incorporated with her therapeutic care and how, with respect to some of these patients, her prescribing patterns were based upon a desire for stabilization; these were patients who presented with multiple psychiatric diagnoses and severe personality disorders, having experienced a history of failure with other treating physicians. She further described her efforts to seek opinions and strategies from other physicians specializing in pharmacology when formulating her management and approach to these patients. At all times, she noted her continued failure to include the details of these consults in the patients' records.

Petitioner also proffered the expert testimony of Sanford Herman, a psychiatrist, who wholly acknowledged the inadequacy of her recordkeeping. For this reason, he interviewed petitioner to fully understand the treatment plan derived for each patient, the means by which the initial and follow-up diagnoses were formulated and the basis upon which she justified her pharmacologic practices. With the information gleaned from petitioner, along with his review of petitioner's patient files, Herman testified extensively with respect to each patient and opined, in general, that petitioner had medically valid reasons to support her diagnosis and prescribing patterns; she simply failed to make note of these facts in her files. Herman also testified that with respect to patients D and E, he personally interviewed such patients and reviewed their medical records in preparation for the hearing. Finding that such patient interviews occurred significantly after the rendition of treatment, the Administrative Law Judge precluded any testimony based thereon.

The Committee ultimately concluded that petitioner had prescribed large quantities of medications to alleviate her patients' symptoms without taking into account their histories of drug abuse and addiction which resulted in an exacerbation of their substance abuse problems and exposure to unnecessary risks. The Committee also faulted petitioner for maintaining inadequate records that lacked patient diagnoses and treatment plans justifying the medications prescribed. Finding petitioner guilty of all 20 specifications of misconduct, it imposed the penalty of license revocation. This CPLR article 78 proceeding ensued.

We reject the contention that the Committee deprived petitioner of a fair hearing when it found, in its decision and order, that Herman's testimony was "not valid." Herman, whose expert status was accepted by the Committee, testified

extensively while acceding to the Committee's request that he limit his testimony to a review of the record and/or to his interview with petitioner when forming his opinions as to patient care. Although we recognize that hearsay evidence is admissible and may constitute substantial evidence if believable, relevant and probative (see, Matter of Gray v Adduci, 73 NY2d 741; Matter of Tsakonas v Dowling, 227 AD2d 729, lv denied 88 NY2d 812), we perceive no error in precluding petitioner's expert from rendering an opinion based upon his interviews with patients D and E since the basis for such opinion was not subject to cross-examination by the Committee (see, Matter of Gross v DeBuono, 223 AD2d 789, 791). Hence, the Committee's determination that Herman's testimony was "not valid" was based upon its resolution of credibility issues and the weight it accorded to his testimony—issues solely within its administrative province (see, Matter of Saldanha v DeBuono, 256 AD2d 935, 936; Matter of Enu v Sobol, 171 AD2d 302, 305). As such determination constituted "an appropriate exercise of its factfinding authority" (Matter of Saldanha v De-Buono, supra, at 936), we find no error.

Addressing next whether the evidence presented was sufficient to support the specifications of misconduct, we find that Ackerman's undisputed testimony that petitioner failed to maintain adequate medical records for each of these patients warrants no further review. In the case of patient A, an alcoholic, Ackerman opined that petitioner prescribed large quantities of Valium even after the patient had been involved in two one-car accidents and had similarly prescribed excessive quantities of Xanax to patient B even after she had been hospitalized for a drug overdose. As to patients C, E and F, Ackerman opined that petitioner continued to prescribe potentially addictive medication even after she received information that they were drug abusers. With patient D, Ackerman testified that petitioner continued to prescribe narcotic pain relievers to treat pain from a fall that had taken place over two years earlier without ever having examined the patient. With Ackerman's testimony constituting the requisite substantial evidence to support the Committee's determination that petitioner was guilty of the charges of professional medical misconduct (see, Matter of Slakter v DeBuono, 263 AD2d 695, 697), we decline to disturb it.

In our review of the penalty, however, while keenly aware that it is not to be disturbed unless it is so disproportionate to the charges sustained as to shock one's sense of fairness (see, Matter of Dolin v State Bd. for Professional Med. Conduct, 274

AD2d 862, 863; *Matter of Carloni v DeBuono*, 245 AD2d 970, 972), we believe that modification is called for. The record reveals that petitioner voluntarily surrendered her medical license in 1998 after having received notice of the charges of misconduct. For over 30 years she treated patients who suffered from psychiatric disorders, many of whom were "treatment failures [having been] rejected by other therapists." She further served as a teacher to her profession, lecturing for a number of years at Columbia University and the State University of New York, Downstate Medical Center, conducting workshops and seminars for a panoply of mental health professionals. By the letters of support received, it is evident that she is highly regarded in the medical community by her professional colleagues, some of whom have sent their own family members to be treated by her. Moreover, before a determination was even rendered and for approximately 2½ years prior to this hearing, petitioner recognized her deficiencies in recordkeeping and accordingly integrated computerized systems for charting medications in complex cases. Several courses on addiction were also completed by her to further attempt to address a charged deficiency.

In light of this record, a suspension, stayed subject to specified terms and conditions which could include the monitoring of her practice (*see, Matter of Hatfield v Department of Health*, 245 AD2d 703, 704), would be an appropriate penalty.

Cardona, P. J., Mercure, Spain and Graffeo, JJ., concur. Adjudged that the determination is modified, on the law, without costs, by annulling so much thereof as revoked petitioner's license to practice medicine in this State; matter remitted to the Hearing Committee of the State Board for Professional Medical Conduct for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.