■ In the Matter of Vidyadhara Kagali, Petitioner, v New York State Board for Professional Medical Conduct, Respondent. [798 NYS2d 248]—

Carpinello, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent which, inter alia, suspended petitioner's license to practice medicine in New York.

After receiving testimony, a Hearing Committee of respondent sustained four of five specifications of professional misconduct against petitioner, including negligence on more than one occasion, incompetence on more than one occasion, gross negligence and gross incompetence. The charges arise out of his continuing medical care of a 35-year-old inmate that he treated between January 10, 2002 and her death on February 16, 2002 from arteriosclerotic heart disease. Despite repeated complaints of chest and upper body pain and discomfort during this time period, petitioner did not properly monitor for or consider any cardiac condition on the patient's part.

The Hearing Committee ordered the suspension of petitioner's license to practice medicine but stayed the suspension pending successful completion of an approved residency program. It further ordered that petitioner be placed on probation for two years following successful retraining, during which time he would practice under the supervision of an approved physician. In this CPLR article 78 proceeding, petitioner does not challenge the findings of misconduct against him or that portion of the penalty calling for retraining. He only challenges the two-year period of probation.

First, petitioner claims that this aspect of the penalty is inconsistent with the Hearing Committee's "obvious and stated intent that [he] be retrained to practice so long as doing so does not pose any public risks." He further claims that the two-year term of probation presents an "insurmountable obstacle" to his return to the practice of medicine. In essence, petitioner claims that if he successfully completes a retraining program, there is no need for him to be on probation.

First and foremost, the Hearing Committee's decision is clear and not inherently contradictory. In its determination, the Hearing Committee stated that if petitioner successfully completes a residency program *and* undergoes probation with intense scrutiny, the public will be protected and a potentially productive physician will not be lost. There is nothing inconsistent or "self contradictory" about the imposition of both requirements. Moreover, "[i]n reviewing the propriety of physician discipline,

this Court is limited to assessing whether the penalty imposed 'is so incommensurate with the offense as to shock one's sense of fairness' and each case is to be judged according to its own facts and circumstances" (*Matter of Gonzalez v New York State Dept. of Health*, 232 AD2d 886, 890 [1996], *lv denied* 90 NY2d 801 [1997] [citations omitted]; *see Matter of Richstone v Novello*, 284 AD2d 737, 739 [2001]). Given the death of his patient under circumstances demonstrating blatant deviations of care on petitioner's part, that aspect of the penalty requiring two years of probation in addition to retraining is not so incommensurate with his acts of professional misconduct as to shock one's sense of fairness. Moreover, to the extent that petitioner claims that this period of probation, as opposed to the findings of misconduct themselves or even his need to be retrained after 30 years of practicing medicine, will create difficulties for him in obtaining future employment, we find this claim to be entirely speculative. In any event, petitioner's concern for future employment stemming solely from his probationary status, assuming successful completion of the residency program, does not persuade us that this aspect of his penalty should be eliminated.

Cardona, P.J., Crew III, Spain and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.