■ In the Matter of MOSHE H. OSTAD, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [837 NYS2d 364]—

Rose, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

The Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, a licensed physician who had practiced for 43 years, with seven specifications of professional misconduct. After receiving testimony and reviewing petitioner's records, a Hearing Committee of the State Board for Professional Medical Conduct sustained the charges of gross incompetence, negligence, making a false report, failing to maintain accurate medical records and fraudulent practice of medicine. Following the resulting revocation of his medical license, petitioner commenced this proceeding challenging the Hearing Committee's determination.

We find no merit in petitioner's initial contention that the charges against him lacked specificity. The record confirms that he was given sufficient supplemental information prior to the hearing to adequately prepare a defense (*see Matter of Block v Ambach,* 73 NY2d 323, 332-334 [1989]; *Matter of Steckmeyer v State Bd. for Professional Med. Conduct,* 295 AD2d 815, 816

[2002]; *Matter of Melone v State of New York Educ. Dept.*, 115 AD2d 854, 856 [1985]).

As for petitioner's challenge to the Hearing Committee's determination of the charges, the scope of our review is limited to whether it is supported by substantial evidence (*see Matter of Youssef v State Bd. for Professional Med. Conduct*, 6 AD3d 824, 825 [2004]; *Matter of Slakter v DeBuono*, 263 AD2d 695, 697 [1999]), and we will defer to the Hearing Committee's resolution of conflicting evidence and witness credibility (*see Matter of Sookhu v Commissioner of Health of State of N.Y.*, 31 AD3d 1012, 1014 [2006]; *Matter of Youssef v State Bd. for Professional Med. Conduct, supra* at 825). Here, in support of the allegations of negligence, gross incompetence and failure to maintain accurate medical records, BPMC presented evidence that petitioner had repeatedly prescribed antibiotics for four pediatric patients with complaints of sore, red throats without recording adequate medical histories or doing throat cultures, and despite his having made a diagnosis for which antibiotics would be ineffective. BPMC's expert established the standard of care for diagnosing such ailments in children and explained the adverse consequences of the improper prescription of antibiotics.

Petitioner presented no expert witness at the hearing and admitted that his notes did not reflect the patients' medical histories. He explained that he dispensed with throat cultures and routinely prescribed antibiotics because he served a low-income community whose members could not be depended upon to return if the cultures revealed the need for medication and, in any event, red throats always meant strep throat. Petitioner further testified that the nature of his patients' community justified giving lower-cost, but less appropriate, medications, and that he often prescribed antibiotics simply because the parents demanded them. The Hearing Committee found the testimony of BPMC's expert to be highly credible while rejecting petitioner's attempts to justify his actions. It also found that petitioner believed that a lower standard of medical care was justified by his patients' economic status. Thus, the evidence established that petitioner repeatedly failed to "exercise the care that a reasonably prudent physician would exercise under the circumstances" (*Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 88 [1993], *appeal dismissed and lv denied* 83 NY2d 901 [1994]; *see Matter of Tulier-Pastewski v State Bd. for Professional Med. Conduct*, 13 AD3d 918, 919 [2004]) and that his conduct was sufficiently egregious to constitute gross incompetence.

Also without merit is petitioner's claim that the charge of

fraudulent practice should not have been sustained because his admittedly false answer on his application for reappointment to the staff of a local hospital was a mistake made with no motive to misrepresent. A finding that a physician is guilty of fraud "requires proof of either an intentional misrepresentation or concealment of a known fact[,] [and] the intent or knowledge element may be inferred from the surrounding circumstances" (*Matter of Steckmeyer v State Bd. for Professional Med. Conduct, supra* at 817-818 [citation omitted]; *see Matter of Catsoulis v New York State Dept. of Health,* 2 AD3d 920, 921 [2003]). Here, the fact that petitioner was then actively participating in ongoing disciplinary hearings supports the Hearing Committee's decision to discredit his testimony about the innocence of his false answer and find that it was made with an intent to deceive. Thus, petitioner has demonstrated no basis for disturbing the Hearing Committee's assessment of credibility (*see e.g. Matter of Sawangkao v New York State Bd. for Professional Med. Conduct,* 12 AD3d 735, 736-737 [2004]).

Finally, considering petitioner's prior professional misconduct, we cannot say that the penalty of revocation of his medical license is so disproportionate to his conduct as to shock one's sense of fairness (*see Matter of Kagali v New York State Bd. for Professional Med. Conduct,* 20 AD3d 720, 722 [2005]; *Matter of Novendstern v Administrative Review Bd. of State Bd. for Professional Med. Conduct,* 15 AD3d 701, 702 [2005]). Petitioner argues that, among other things, alternative penalties, such as prohibiting him from treating children, would have been more appropriate since the charges related only to pediatric patients. The Hearing Committee noted, however, that petitioner had twice been disciplined in the past, with the most recent instance being in 2000 (*Matter of Ostad v New York State Dept. of Health,* 309 AD2d 989 [2003]). The Hearing Committee also considered the fact that petitioner had a criminal conviction for receiving Medicare kickbacks. Further, he showed no contrition for his past errors and plainly lacked the necessary insight to avoid future misconduct (*see Matter of Braick v New York State Dept. of Health,* 13 AD3d 740, 742-743 [2004]). Moreover, his fraudulent conduct alone would be sufficient to uphold the penalty of revocation (*see Matter of Harris v Novello,* 276 AD2d 848, 851 [2000]; *Matter of Bezar v DeBuono,* 240 AD2d 978, 980 [1997]).

Crew III, J.P., Carpinello, Mugglin and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.