■ In the Matter of HANK ROSS, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [845 NYS2d 162]—

Crew III, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, an orthopedic surgeon, was charged by respondent in an original and amended statement of charges with 26 specifications of misconduct in violation of various subdivisions of Education Law § 6530. Specifically, petitioner was charged with fraudulent practice, willfully filing false reports, violating Public Health Law § 2805-k and engaging in conduct evidencing moral unfitness to practice medicine. The charges stemmed from information that petitioner provided on, among other documents, applications for privileges at certain hospitals. After hearing testimony from the relevant witnesses and reviewing the documentary evidence, a three-member Hearing Committee sustained all of the charges except those pertaining to moral unfitness and, as to penalty, suspended petitioner's license for one year, imposed a two-year period of probation, required petitioner to complete 20 hours of continuing medical education and directed that, during the probationary period, any renewal, appointment or insurance applications be submitted to the Director of the Office of Professional Medical Conduct.

Petitioner and the Bureau of Professional Medical Conduct each sought review of the Hearing Committee's decision by the Administrative Review Board for Professional Medical Conduct (hereinafter ARB). Upon review, the ARB affirmed the Hearing Committee's findings and, further, sustained the charge of moral unfitness and modified the penalty by revoking petitioner's license to practice medicine. Petitioner thereafter commenced this proceeding pursuant to CPLR article 78 seeking to annul the ARB's determination and unsuccessfully sought a stay of the ARB's order pending our review.

It is undisputed that petitioner submitted applications to various entities that contained inaccurate information regarding, most significantly, his disciplinary background. What the parties now dispute is the net effect of those inaccuracies, with petitioner contending that these inadvertent and inconsequential errors were innocently committed by his mother, who filled out the original applications that formed the template for the ones that followed, and thereafter were perpetuated by his office manager, and the Bureau arguing that petitioner's repeated submission of numerous applications over a 15-year period—even after some of the more glaring inaccuracies were called to his attention—demonstrates a pattern of fraudulent and intentional misconduct. To resolve this dispute, we must consider the nature of the misinformation provided.

In this regard, the record reflects, among other things, that during his residency at the Hospital for Joint Diseases, petitioner was suspended from his duties as a fourth-year orthopedic resident for a period of five weeks (December 26, 1988 through February 1, 1989)—a fact that petitioner failed to disclose on his April 11, 1989 application for privileges at that hospital.*

Similarly, petitioner was served with a statement of charges in February 1988 stemming from an incident that occurred during his residency at Kings County Hospital Center in December 1986. Ultimately, a censure and reprimand was imposed, and this Court upheld that determination in November 1990. Nonetheless, petitioner failed to disclose such information and/or the resulting malpractice action on, among other things, his March 1989 application for privileges at Winthrop University Hospital, his April 1989 application for appointment at the Hospital for Joint Diseases or his May 1989 application for privileges at Booth Memorial Medical Center. Despite the fact that petitioner plainly was aware of the significance of these omissions, as evidenced by his then attorney's letter to a department chair at Winthrop University Hospital in November 1989, as well as letters of admonishment received from that hospital in December 1989 and from Mercy Hospital in May 1990 and a letter he authored attempting to explain his conduct to representatives of Booth Memorial Medical Center in January 1990, such omis-

---

* Although petitioner claims to have either not completed, not reviewed or not signed the various applications at issue, as petitioner plainly is responsible for the accuracy of the information contained therein, we will treat any errors or omissions as petitioner's. To that end, on the application in question, the question read, "During your residency were you ever suspended, placed upon probation, formally reprimanded, asked to resign?", to which petitioner responded, "No."

sions continued in subsequent applications. Nor did petitioner disclose that he had been the subject of an investigation by the Office 'of Professional Medical Conduct in 2002 or that he had been subject to focus review at one of the hospitals at which he had privileges.

As noted previously, petitioner contends that these were inadvertent errors initially committed by his mother and subsequently perpetuated by his office manager, the latter of whom simply copied the information provided on prior applications. While reluctantly acknowledging that he ultimately is responsible for such misinformation, petitioner argues that the record is bereft of any evidence of intent to mislead the various hospitals and related entities at issue and, more to the point, asserts that he cannot be held responsible for failing to disclose information of which many of the institutions already were aware. We are not so persuaded.

The case law makes clear that fraudulent practice requires "proof of either an intentional misrepresentation or concealment of a known fact, [and] the intent or knowledge element may be inferred from the surrounding circumstances" (*Matter of Steckmeyer v State Bd. for Professional Med. Conduct*, 295 AD2d 815, 817 [2002]; *see Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1253 [2007]). Even accepting that the initial errors were entirely innocent, we agree with the Hearing Committee and the ARB that petitioner's perpetuation of that misinformation on subsequent applications—after clearly being notified of such errors and their resulting magnitude—and his utter failure to undertake any effort whatsoever to correct such errors and/or ensure that they were not repeated evidences a willful intent to mislead and deceive the relevant entities. For that reason, we see no reason to disturb the ARB's determination as to the charges of fraudulent practice and willfully filing a false report.

We reach a similar conclusion regarding the charge of moral unfitness. To be sure, petitioner's conduct here did not implicate patient care. However, even the Hearing Committee characterized petitioner's conduct as "unprofessional, irresponsible, intentional, and deliberate" and found that he "lack[ed] the ethical or legal understanding of his responsibility as a physician to the honor of the profession," noting that petitioner had been "warned a number of times but refused to heed." Although the Hearing Committee found insufficient proof to sustain this charge, the ARB was free to substitute its judgment and, in so doing, found that petitioner's "repeated, deliberate false representations" violated the public trust and demonstrated an

overall lack of integrity. Again, we are unable to discern any basis for disturbing the ARB's findings on this point.

As to the issue of penalty, we cannot say, based upon our review of the record as a whole, that the penalty of revocation is so disproportionate to the underlying offenses as to be shocking to one's sense of fairness (*see Matter of Braick v New York State Dept. of Health*, 13 AD3d 740, 742 [2004]). The fact that patient care was not implicated does not preclude revocation of petitioner's license (*see Matter of Zharov v New York State Dept. of Health*, 4 AD3d 580 [2004])—particularly where, as here, the ARB found that the lack of integrity evidenced by petitioner over a period of years could not be remedied by imposing a lesser sanction, i.e., a probationary period and a few hours of continuing education. Petitioner's remaining contentions, including his assertion that the charge that he violated Public Health Law § 2805-k was impermissibly vague, have been examined and found to be lacking in merit.

Mugglin, Rose, Lahtinen and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.