■ In the Matter of UMA SUNDARAM, Petitioner, v ANTONIA C. NOVELLO, as Commissioner of Health, Respondent. [861 NYS2d 822]—

---

Lahtinen, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which, among other things, suspended petitioner's license to practice medicine in New York for two years.

Petitioner, a physician specializing in gastroenterology, practiced in the City of Rochester, Monroe County from 2001 to 2004, and has since moved out of New York. In 2006, the Bureau of Professional Medical Conduct (hereinafter BPMC) filed a statement of charges against him pertaining to the time he practiced in New York, alleging various specifications of professional misconduct stemming from his treatment of 12 patients and statements he made when interviewed by individuals from the Office of Professional Medical Conduct. The Hearing Committee of the State Board for Professional Medical Conduct, while dismissing many factual allegations and specifications following a hearing, nonetheless sustained certain specifications, including that petitioner practiced with negligence on more than one occasion, practiced with incompetence on more than one occasion, ordered unwarranted and excessive tests or treatment, and failed to maintain proper medical records. The Committee noted in its decision that the majority of sustained allegations related to petitioner's failure to appropriately document patient conditions and his conducting of invasive medical procedures without adequate medical indication. The Committee suspended petitioner's license to practice medicine in New York for two years, placed him on probation during the period of suspension and tolled the suspension for such time as petitioner was not engaged in active practice in New York.

Both parties appealed to the Administrative Review Board for Professional Medical Conduct (hereinafter ARB). The ARB confirmed the Committee's determinations that petitioner practiced with negligence on more than one occasion, subjected a patient to unwarranted tests or treatment, and failed to maintain accurate records. The finding that he practiced with incompetence on more than one occasion was overturned. The penalty was modified to remove the toll from the two-year suspension and the period of probation was lengthened to five years. Petitioner commenced this proceeding challenging the ARB's determination.

Petitioner initially argues that the Administrative Law Judge (hereinafter ALJ) erred in admitting the opinion testimony of BPMC's expert. This argument is premised primarily upon the fact that the expert was not board certified as a gastroenterologist and he had not previously performed an endoscopic retrograde cholangiopancreatography procedure (hereinafter ERCP), which was the procedure involved in several of the patient cases at issue. A physician is generally qualified to render an opinion so long as he or she "possess[es] the requisite skills, training, education, knowledge and experience upon which to base a reliable opinion with regard to the treatment of patients at issue" (*Matter of Schoenbach v DeBuono*, 262 AD2d 820, 822 [1999], *lv denied* 94 NY2d 756 [1999]; *see Matter of Lampidis v Mills*, 305 AD2d 876, 877 [2003]). BPMC's expert has been a professor of medicine in the division of gastroenterology at Albany Medical College for over 30 years, is the lead physician in gastroenterology at the Veteran's Hospital in the City of Albany and has published and conducted research in the field. He explained that he did not take a board test in gastroenterology because he received his training prior to the development of a board test in that field and he was "grandfathered" from having to take those boards. While he had not performed an ERCP, he displayed sufficient knowledge of the process to permit his testimony. We are unpersuaded that it was error to admit and consider his expert testimony (*see Matter of Enu v Sobol*, 208 AD2d 1123, 1124-1125 [1994]).

Next, we consider petitioner's contention that the ALJ erred in not allowing certain medical texts into evidence. "[T]he strict rules of evidence do not apply in administrative proceedings" (*Matter of Rojas v Sobol*, 167 AD2d 707, 708 [1990], *lv denied* 77 NY2d 806 [1991]; *see Matter of Sookhu v Commissioner of Health of State of N.Y.*, 31 AD3d 1012, 1013-1014 [2006]) and, "[t]o warrant annulment, an erroneous evidentiary ruling must 'infect the entire proceeding with unfairness'" (*Matter of*

*Morfesis v Sobol*, 172 AD2d 897, 897 [1991], *lv denied* 78 NY2d 856 [1991], quoting *Matter of Ackerman v Ambach*, 142 AD2d 842, 845 [1988], *affd* 73 NY2d 323 [1989]). Both parties had experts at the hearing to render opinions (and to be cross-examined) regarding relevant issues. The use of medical texts are typically limited (*see generally* Prince, Richardson on Evidence § 7-313 [Farrell 11th ed]), and the exclusion of such material did not deprive petitioner of a fair hearing.

Similarly, we are unpersuaded by petitioner's assertion that it was error not to dismiss charges involving patients whose complete medical records were not produced by BPMC at the hearing. Since these were petitioner's patients, he generally would have records regarding such individuals. As for the hospital's separate records, he had the ability to subpoena any necessary records (*see* Public Health Law § 230 [10] [c] [4]).

Petitioner argues that one member of the Committee should have been disqualified as biased. To set aside a determination for purported bias, petitioner must set forth "factual support demonstrating bias and proof that the administrative outcome flowed from such bias" (*Matter of Khan v New York State Dept. of Health*, 17 AD3d 938, 939 [2005]; *see Matter of Maglione v New York State Dept. of Health*, 9 AD3d 522, 523 [2004]). Here, petitioner asserted that one Committee member—a nurse who lived in the Rochester area—would have been exposed to negative reports regarding petitioner appearing in the local newspaper and, moreover, that she may have known about him through her involvement in the local medical community. However, the member stated on the record that she did not know petitioner and that she had not read about him in the newspaper. She represented that she "absolutely" could be impartial. The record does not support petitioner's argument that this member harbored bias toward him.

As for petitioner's challenge to the ARB's determination of the charges, "our review is limited to ascertaining whether [the ARB's determination] was arbitrary and capricious, affected by error of law or an abuse of discretion" (*Matter of Insler v State Bd. for Professional Med. Conduct*, 38 AD3d 1095, 1097 [2007] [internal quotation marks and citation omitted]; *see Matter of Buckner v State Bd. for Professional Med. Conduct*, 7 AD3d 840, 841 [2004]). "[M]atters of credibility and the weight to be accorded an expert's testimony is solely within the province of the Hearing Committee" (*Matter of Forester v State Bd. for Professional Med. Conduct*, 36 AD3d 1127, 1128 [2007], *lv denied* 8 NY3d 812 [2007]). Crucial evidence included the testimony of the two experts, one produced by each party. In addition,

petitioner testified extensively. The testimony of BPMC's expert was found by the Committee to be "very credible." His objectivity was reflected by the fact that some of his testimony aided petitioner (resulting in withdrawal of some allegations), and he did not criticize petitioner's ability as a technician. Petitioner's expert, who was eminently qualified, was also found "very credible" by the Committee. However, some of his answers were afforded less weight because of discussions he had with petitioner in contemplation of the hearing regarding the care of the subject patients. Little weight was given to petitioner's testimony, which the Committee found lacked credibility. Deferring to the Committee's credibility determinations, as we must, there is ample evidence in this record to satisfy the circumscribed standard of review we are permitted to exercise in these proceedings.

Finally, petitioner contends that the penalty was inappropriate. The penalty imposed by the ARB will not be disturbed upon review unless it is "so disproportionate to the underlying offenses as to be shocking to one's sense of fairness" (*Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d 927, 930 [2007], *lv denied* 10 NY3d 701 [2008]; *see Matter of Chatelain v New York State Dept. of Health*, 48 AD3d 943, 944 [2008]; *Matter of Celestin v Novello*, 43 AD3d 545, 546 [2007]). The sustained charges include, among others, failing to document reasons for serious procedures performed on multiple patients, reporting contrary results from a single procedure, and subjecting a patient to an unnecessary and unwarranted invasive procedure. Under such circumstances, we do not find the penalty so out of line as to shock one's sense of fairness.

Peters, J.P., Spain, Carpinello and Malone Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.