■ In the Matter of GARY TSIRELMAN, Petitioner, v RICHARD F. DAINES, as Commissioner of Health, et al., Respondents. [876 NYS2d 237]—

Rose, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Hearing Committee of the State Board for Professional Medical Conduct which, among other things, revoked petitioner's license to practice medicine in New York.

Respondent Hearing Committee of the State Board for Professional Medical Conduct sustained 51 of 69 charges of professional misconduct against petitioner, a physician licensed to practice in New York, including fraudulent medical practice, willfully making or filing false reports, ordering treatment not warranted by the patient's condition and moral unfitness. The charges were based primarily upon petitioner's submission of numerous bills to a no-fault automobile insurer for invasive nerve destruction procedures (hereinafter NDPs) that were neither medically necessary nor actually performed. Petitioner admitted that he had never performed NDPs, but blamed the charges on the billing service that had prepared the bills for his medical clinic. He claimed that the billing service had misread his notes concerning the noninvasive "synaptic" procedure he had regularly performed, assigned an additional billing code for the much more expensive NDPs and then, without his knowledge or authorization, used a stamp bearing his signature to certify those bills. The Committee found petitioner's explanation to be unbelievable, held him responsible for the content of his bills and concluded that he knew that all of the identical billings were false and that he had submitted them to the no-fault insurer with the intent to deceive. As a result, the Committee revoked petitioner's medical license and imposed a $100,000 fine. Petitioner then commenced this CPLR article 78 proceeding to annul that determination.

Our review of such a decision is limited to assessing whether it is supported by substantial evidence (*see Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1252 [2007]; *Matter of Richstone v Novello*, 284 AD2d 737, 737 [2001]; *Matter of Slakter v DeBuono*, 263 AD2d 695, 697 [1999]). So long as the evidence meets that standard, we will defer to the credibility determinations made by the Committee (*see Matter of Forester v State Bd. for Professional Med. Conduct*, 36 AD3d 1127, 1128 [2007], *lv denied* 8 NY3d 812 [2007]; *Matter of Slakter v DeBuono*, 263 AD2d at 697).

The record confirms that petitioner, who has owned a number

of clinics over the years, denied ever having or using a signature stamp, yet other evidence showed that his stamp was regularly used to bill for his services. He also testified that, had he ever seen any of the bills for NDPs, he "would certainly not have authorized them." Yet, after he graduated from law school and was admitted to the practice of law in New York, he transferred ownership of his clinic to another physician and, acting as the attorney representing his former clinic in no-fault arbitration proceedings, he sought to collect bills, similar to those at issue here, charging for NDPs and bearing his signature stamp. Further, petitioner initially denied any association with the clinic prior to purchasing it, yet he later conceded that he had previously worked for it for several years. Citing this and other evasive, fabricated and inconsistent testimony, the Committee found that petitioner's claims, including that the double billing amounted to no more than a mistake, completely lacked credibility.

Applying the standard that physicians are ultimately responsible for the accuracy of their bills, and given the findings of petitioner's long-term relationship with the clinic and his complete lack of credibility, the Committee could infer his knowledge that the bills were false, rather than merely inaccurate, and that he had willfully intended to mislead and deceive the insurer (see Matter of Ross v State Bd. for Professional Med. Conduct, 45 AD3d 927, 929 [2007], lv denied 10 NY3d 701 [2008]; Matter of Ostad v New York State Dept. of Health, 40 AD3d at 1253; Matter of Corines v State Bd. for Professional Med. Conduct, 267 AD2d 796, 799-800 [1999], lv denied 95 NY2d 756 [2000]; Matter of Post v State of N.Y. Dept. of Health, 245 AD2d 985, 987 [1997]). Thus, the evidence presented and the inferences reasonably flowing therefrom amply support the sustained charges of fraudulent medical practice, filing false reports and moral unfitness.

We also find no merit in petitioner's argument that he was denied his rights to a fair hearing and due process by the Committee's admission and consideration of patient records that were uncertified and allegedly incomplete. Inasmuch as "the strict rules of evidence do not apply in administrative proceedings" (Matter of Sundaram v Novello, 53 AD3d 804, 806 [2008], lv denied 11 NY3d 708 [2008] [internal quotation marks and citation omitted]), petitioner was required to show that the lack of certification infected the entire proceeding with unfairness in order to establish a deprivation of due process (see id. at 806-807). This he did not do. As for the assertion that the records were incomplete, petitioner argues that the complete treatment

records for his patients would have reflected that he never ordered NDPs or listed them as having been performed. We note, however, that the only documents in the record which listed the NDPs were the bills. Thus, additional treatment records showing their absence would have been redundant and irrelevant to the issues of his knowledge and intent. The record also shows that, with one exception discussed below, the Committee did not sustain any charge where additional patient records could have been exculpatory. The Committee fully explored the discrepancies in the records that were provided and gave petitioner every opportunity to submit additional records (*see Matter of Sundaram v Novello*, 53 AD3d at 807).

However, inasmuch as the bills are the only documents in the record that list the NDPs and the Committee cites no evidence for its finding that petitioner indicated to anyone other than the no-fault insurer that NDPs were performed, the evidence does not support the Committee's conclusion that petitioner ordered treatment not warranted by the patients' condition. Thus, we will annul those charges. Nonetheless, because the Committee stated that petitioner's fraudulent practice of medicine standing alone warranted the revocation of his license and the fine imposed, the exclusion of those charges does not require reconsideration of the discipline administered here (*see Matter of Adler v Bureau of Professional Med. Conduct, State of N.Y., Dept. of Health*, 211 AD2d 990, 993 [1995]). Viewing only the remaining sustained charges, we are not able to say that the penalty imposed is so disproportionate to petitioner's fraudulent behavior that it shocks our sense of fairness (*see Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d at 930; *Matter of Ostad v New York State Dept. of Health*, 40 AD3d at 1253 [2007]; *Matter of Sookhu v Commissioner of Health of State of N.Y.*, 31 AD3d 1012, 1014-1015 [2006]).

Mercure, J.P., Lahtinen, Malone Jr. and Kavanagh, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of specifications 59 to 68 of the charges, and, as so modified, confirmed.