**14-2154-cv**
*Tsirelman v. Daines*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2014

ARGUED: APRIL 16, 2015
DECIDED: JULY 24, 2015

No. 14-2154-cv

GARY TSIRELMAN, M.D.,
*Plaintiff-Appellant*,

*v.*

RICHARD F. DAINES, M.D., Commissioner of Health, STATE OF NEW YORK DEPARTMENT OF HEALTH, KENDRICK A. SEARS, M.D., Chairman of the State Board for Professional Medical Conduct, STATE OF NEW YORK DEPARTMENT OF HEALTH, and STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT and THEIR EMPLOYEES and AGENTS, *Defendants-Appellees.*[*]

————

Appeal from the United States District Court for the Eastern District of New York.
No. 1:10-cv-903 – Jack B. Weinstein, *Judge*.

————

---

[*] The clerk of the court is directed to amend the caption as set forth above.

Before: WINTER, WALKER, and DRONEY, *Circuit Judges*.

————

Plaintiff Gary Tsirelman's medical license was revoked in a New York disciplinary proceeding. On appeal, he challenges New York's use of the preponderance-of-the-evidence standard in such proceedings as a violation of the Due Process Clause. Because we hold that the Constitution does not require a higher standard of proof in fraud-based medical disciplinary proceedings, we AFFIRM the district court's order dismissing Tsirelman's complaint.

————

ADAM FRANCOIS WATKINS, Watkins Bradley LLP, New York, NY, *for Plaintiff-Appellant*.

KAREN W. LIN (Claude S. Platton, Barbara D. Underwood, Solicitor General of New York, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for Defendants-Appellees*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff Gary Tsirelman's medical license was revoked in a New York disciplinary proceeding. On appeal, he challenges New York's use of the preponderance-of-the-evidence standard in such proceedings as a violation of the Due Process Clause. Because we hold that the Constitution does not require a higher standard of

proof in fraud-based medical disciplinary proceedings, we AFFIRM the district court's order dismissing Tsirelman's complaint.

## BACKGROUND

Gary Tsirelman became licensed to practice medicine in 1996. In 2000, he acquired an ownership interest in LaMed medical clinic ("LaMed"). While practicing at LaMed, Tsirelman performed synaptic therapy, a non-invasive, drug-free treatment consisting of electrical impulses administered to areas causing the patient pain. Flatlands Management, the contractor who assembled LaMed's bills, however, billed insurance companies for a nerve destruction procedure when Tsirelman performed synaptic therapy, for which no billing codes existed. Synaptic therapy is not a form of nerve destruction procedure.

In 2007, the State of New York Office of Professional Medical Conduct ("OPMC") charged Tsirelman with practicing medicine fraudulently, willfully making or filing a false report, ordering excessive tests or treatments not warranted by the patient's condition, and therefore engaging in conduct that evidenced moral unfitness to practice medicine. OPMC based the charges on Tsirelman's bills for nerve destruction procedures that he never performed. After a six-day hearing, a Hearing Committee for the State Board of Professional Medical Conduct (the "Hearing Committee"), which consisted of two licensed physicians, one lay

member, and a non-voting administrative law judge as presider, sustained 51 of 69 charges of professional misconduct. The Hearing Committee found, by a preponderance of the evidence, that Tsirelman knew that bills were being sent under his signature for procedures that he did not perform and that he allowed such bills to be sent for his own benefit. *In re Tsirelman*, No. 07-269, at 43 (N.Y. Bd. Prof. Med. Conduct Dec. 5, 2007), J.A. 234. The Hearing Committee revoked Tsirelman's medical license and fined him $100,000. *Id.* at 52, J.A. 243.

Tsirelman filed an Article 78 proceeding in New York state court seeking review of the Hearing Committee's determination.[1] In April 2009, the Appellate Division affirmed the Hearing Committee's principal findings and held that "the Committee could infer [Tsirelman's] knowledge that the bills were false, rather than merely inaccurate, and that he had willfully intended to mislead and deceive the insurer." *Tsirelman v. Daines*, 876 N.Y.S.2d 237, 239 (App.

---

[1] An Article 78 proceeding "provide[s] an expeditious and essentially uniform procedure for judicial review of . . . action (or inaction) by agencies and officers of state and local government." *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) (omission in original) (internal quotation marks omitted).

Div. 3d Dep't 2009). The Appellate Division affirmed both penalties. *Id.* at 240.[2]

On March 1, 2010, Tsirelman filed this action in federal district court (Jack B. Weinstein, *Judge*), alleging that defendants, the New York commissioner of health, the chairman of the state board for professional medical conduct, and their agencies, violated his due process rights in the conduct of his disciplinary hearing. Defendants moved to dismiss or, in the alternative, for abstention. On October 14, 2010, the district court granted defendants' motion for abstention to permit Tsirelman to petition the director of OPMC to reopen his case in light of an intervening amendment to New York's Public Health Law. The district court stayed the action pending Tsirelman's petition.

Tsirelman filed a motion for reconsideration with the director of OPMC. The director denied Tsirelman's motion. Thereafter, Tsirelman moved to reopen his federal action, and defendants renewed their motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. On May 14, 2014, the district court granted the motion to dismiss as to the New York Department of Health and the State Board for Professional Medical Conduct

---

[2] The Appellate Division annulled the Hearing Committee's finding that Tsirelman had ordered treatment not warranted by his patients' conditions.

under the Eleventh Amendment. In doing so, the district court implicitly denied that portion of the motion concerning defendants Daines and Sears, who were sued in their official capacities. However, the district court also concluded that Tsirelman's complaint failed to state a claim under the Due Process Clause. Accordingly, the district court granted defendants' motion to dismiss, and Tsirelman timely appealed.

## DISCUSSION

Tsirelman argues that defendants denied him due process in their conduct of his disciplinary hearing by employing a preponderance-of-the-evidence standard. Before turning to Tsirelman's merits arguments, however, we address defendants' argument that Tsirelman's complaint must be dismissed as against the individual defendants because they are protected from suit by the Eleventh Amendment.

We review de novo the district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or failure to state a claim under Rule 12(b)(6). *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). Like the district court, we "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.*

I.      **Eleventh Amendment Immunity**

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has consistently interpreted the Eleventh Amendment to bar suits brought against an unconsenting state in federal courts "by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Because Tsirelman is a citizen of New York who brought suit against New York officials in their official capacities, defendants argue that his suit is nonjusticiable under the Eleventh Amendment. We reject this contention because Tsirelman's suit seeks prospective relief against state officials in their official capacities, which is permitted notwithstanding the general proscription of suits against states by the Eleventh Amendment.

In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment did not bar an action in federal court to enjoin a state official from taking official action claimed to violate federal law. 209 U.S. 123, 155-56 (1908); *see also Edelman*, 415 U.S. at 664. Under this doctrine, federal courts may hear claims for prospective injunctive relief, *see Edelman*, 415 U.S. at 677, but retroactive claims seeking monetary damages from the state treasury are barred by the Eleventh Amendment because, even if state officials are the nominal defendants, the state is the real party in interest, *id.* at 663.

Tsirelman's complaint seeks an injunction restoring the status quo unless and until the State conducts a new hearing and establishes the charges based on a clear and convincing standard. Defendants characterize this claim as seeking purely retrospective relief because Tsirelman is trying to remedy a past violation of his due process rights that occurred during his disciplinary hearing.

Contrary to defendants' contentions,[3] Tsirelman's complaint seeks prospective relief because he requests a remedy to an alleged ongoing violation of federal law. Tsirelman claims that New York's rule permitting proof of fraud-based medical misconduct using a preponderance-of-the-evidence standard violates due process and that, as a result, he is unconstitutionally being denied his medical license. As a remedy, Tsirelman seeks an injunction requiring either reinstatement of his license or a hearing that, in his view, comports with due process. Either outcome would remedy Tsirelman's alleged injury and would be "prospective relief that is not barred by the Eleventh Amendment." *Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985) (public employee's request for reinstatement or a hearing sought prospective injunctive relief). Therefore, we affirm the

---

[3] Defendants also argue that Tsirelman lacks standing to seek the requested injunction because, as he is no longer a doctor, there is no reasonable prospect Tsirelman will again find himself subject to medical disciplinary proceedings. This argument assumes an outcome in defendants' favor and is therefore without merit.

district court's denial of Daines's and Sears's motion to dismiss pursuant to the Eleventh Amendment.

## II. Tsirelman's Due Process Challenges

We turn now to the merits of Tsirelman's appeal. Tsirelman makes two separate but related challenges to New York's use of the preponderance-of-the-evidence standard: (a) a facial challenge to the standard as used in all fraud-based medical disciplinary proceedings, and (b) an as-applied challenge to use of the standard in his own proceeding.

### a. Facial Challenge

New York's medical misconduct committees base their conclusions on a statutorily-prescribed preponderance-of-the-evidence standard. N.Y. Pub. Health L. § 230(10)(f). Tsirelman argues that New York's use of the preponderance standard fails to comport with the minimum requirements of due process in fraud-based disciplinary proceedings because of the compelling private and public interests in avoiding erroneous license revocations. Tsirelman contends that only the higher clear and convincing standard comports with due process.

The preponderance standard is constitutionally adequate. "The function of a standard of proof . . . is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of

adjudication." *Addington v. Texas*, 441 U.S. 418, 423 (1979) (internal quotation marks omitted). "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Id*. To determine the standard of proof required by the Constitution, we balance: (1) "the private interests affected by the proceeding"; (2) "the risk of error created by the State's chosen procedure"; and (3) "the countervailing governmental interest supporting use of the challenged procedure." *Santosky v. Kramer*, 455 U.S. 745, 754 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The preponderance standard strikes the proper balance between these competing interests.

First, physicians have an important, but not compelling, property interest in their medical licenses and a liberty interest in pursuing their chosen profession. *See Donk v. Miller*, 365 F.3d 159, 163 (2d Cir. 2004); *RRI Realty Corp. v. Inc. Vill. of Southhampton*, 870 F.2d 911, 917 n.4 (2d Cir. 1989). However, if a physician loses his license, he remains free to pursue other employment and otherwise participate in life's activities. For this reason, we find a physician's interest in his license to be less compelling than those interests that the Supreme Court has determined require clear and convincing proof before the state can effect a deprivation. *Compare Addington*, 441 U.S. at 433 (civil commitment proceedings must be conducted under at least a clear and convincing standard), *with Vance v.*

*Terrazas*, 444 U.S. 252, 266 (1980) (abandonment of citizenship proceedings may be conducted under a preponderance standard).

Tsirelman also argues that a physician's interest in a fraud-based medical disciplinary hearing is more substantial than in other disciplinary proceedings because the resulting reputational harm can extend beyond the medical field. This distinction is unpersuasive. A license revocation based on medical incompetence, sexual impropriety, or another serious charge would also tend to taint a physician's other future endeavors. In any event, even if we accepted Tsirelman's argument that physicians have a greater interest in fraud-based revocation proceedings, that interest still does not rise to the fundamental level that requires the application of a heightened standard of proof as a matter of federal due process. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983) (preponderance-of-the-evidence standard applied in securities-fraud case despite "the risk of opprobrium that may result from a finding of fraudulent conduct").

Second, the preponderance standard "fairly distributes the risk of error" between the state and the physician. *Santosky*, 455 U.S. at 765. The corresponding consequences of error to the physician and the state in a fraud-based license revocation are roughly equivalent. If a doctor's license is erroneously revoked, he should be, but is not, allowed to practice medicine. If a doctor's license is

erroneously maintained, he should not be, but is, allowed to continue to practice. Thus, the "social disutility" of each potential outcome is about the same, and it is not in general more serious for a license to be erroneously revoked than to be erroneously maintained. *See In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).

Third, the countervailing governmental interest is strong. The State, on behalf of the public, has a substantial interest in revoking the licenses of doctors who engage in fraud or are otherwise found to be unfit to practice medicine. *See Doe v. Connecticut*, 75 F.3d 81, 85 (2d Cir. 1996) (per curiam). Although he recognizes this interest, Tsirelman argues that fraud-based revocations do not further it because they do not target physicians providing substandard care. But Tsirelman's conception focuses on only one of the State's many healthcare interests. New York has an interest in ensuring that its citizens receive adequate care *and* that they have access to that care. Fraudulent insurance claims drive up the costs of health insurance for everyone, making it difficult for some New Yorkers to afford quality healthcare, and thus limiting their access to care. Moreover, as a major consumer of healthcare through the insurance programs operated by the State, New York has a direct interest in affordable medical care.

In sum, while we acknowledge a physician's interest in maintaining his license, the State has at least as substantial an interest in protecting the public, and the cost of error is about the same. Thus, we find no constitutional basis for exempting fraud-based medical disciplinary proceedings from the traditional powers of state legislatures to prescribe standards of proof in state proceedings.[4] *See Vance*, 444 U.S. at 265; s*ee also In re Friedman*, 51 F.3d 20, 22 (2d Cir. 1995) (holding that a federal court may constitutionally impose reciprocal attorney discipline based on an underlying state disciplinary proceeding conducted under the preponderance-of-the-evidence standard). Accordingly, we affirm the district court's dismissal of Tsirelman's facial challenge to the State's use of the preponderance standard in fraud-based medical disciplinary proceedings.[5]

---

[4] We recognize that this conclusion conflicts with the conclusions of the supreme courts of Oklahoma, Washington, and Wyoming. *See Johnson v. Bd. of Governors of Registered Dentists*, 913 P.2d 1339, 1347 (Okla. 1996); *Nguyen v. State*, 29 P.3d 689, 697 (Wash. 2001); *Painter v. Abels*, 998 P.2d 931, 940-41 (Wyo. 2000). In so holding, the Oklahoma and Wyoming Supreme Courts explicitly recognized that their state constitutions can afford greater due process safeguards than the Federal Constitution. *Johnson*, 913 P.2d at 1346; *Painter*, 998 P.2d at 941.

[5] We have also considered Tsirelman's facial and as-applied challenges to the absence of formal rules of evidence and find them to be without merit. "[P]rocedural due process does not require rigid adherence to technical evidentiary rules in administrative hearings, as long as the evidence introduced is reliable." *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1298 (2d Cir. 1991). There is no support for the inference,

### b. As-Applied Challenge

Finally, we turn to Tsirelman's claim that, even if use of the preponderance-of-the-evidence standard is not on its face unconstitutional, its use in this case violated due process as applied to him because of the limited evidence from which the Hearing Committee could infer fraudulent intent.

Tsirelman's as-applied challenge requires us to consider the particular facts of his case to determine whether the application of the preponderance standard, although constitutional on its face, deprived him of a protected right. *See, e.g.*, *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006).

Tsirelman's hearing did not deviate from normal hearing procedures in any material respect. In any event, the details of the

---

necessary to Tsirelman's position, that evidence of fraud in medical disciplinary hearings will necessarily be unreliable unless governed by formal rules of evidence. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (to sustain a facial challenge, "the challenger must establish that no set of circumstances exists under which the Act would be valid.").

Likewise, Tsirelman has failed to allege any facts suggesting the lack of formal rules of evidence resulted in an as-applied due process violation. The Hearing Committee expressly acknowledged certain gaps in the evidentiary record and afforded Tsirelman the benefit of the doubt on any claims as to which "there was even a slight possibility" that additional information might have bolstered his position. *In re Tsirelman*, No. 07-269, at 41, J.A. 232. And, as noted above, the Appellate Division annulled an entire subset of charges for which it concluded that additional evidence might have proven exculpatory.

hearing show that application of the preponderance standard did not deprive Tsirelman of due process because it did not unacceptably increase the risk of error. As the Appellate Division has already concluded, there was ample evidence from which the Hearing Committee could infer Tsirelman's fraudulent intent, including discrepancies between patient medical records and the bills LaMed submitted to insurers, as well as Tsirelman's "complete lack" of credible testimony. *Tsirelman v. Daines*, 876 N.Y.S.2d at 239. Tsirelman also availed himself of the robust procedures permitted in New York's disciplinary hearings, including representation by counsel, presentation of evidence, witness testimony, and cross-examination of the State's witnesses. Finally, Tsirelman obtained review of the Hearing Committee's determination in an Article 78 proceeding.

In sum, there is nothing exceptional about Tsirelman's hearing that rendered the Hearing Committee's use of the preponderance standard unconstitutional as applied to Tsirelman. In essence, Tsirelman asks us to reevaluate the Hearing Committee's findings, but due process guarantees only a fair hearing, which Tsirelman received in full. *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 88 (2d Cir. 2000). Accordingly, the district court's dismissal of Tsirelman's as-applied challenge is affirmed.

**CONCLUSION**

For the foregoing reasons, the judgment is AFFIRMED.