■ In the Matter of EMMANUEL L. GANDIANCO, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, et al., Respondents.—Weiss, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent Commissioner of Education which revoked petitioner's license to practice medicine in New York.

Petitioner is a physician who was employed as a medical specialist to provide emergency and necessary medical care at Central Islip Psychiatric Center, a 1,300-bed hospital in Suffolk County. He was on duty from 4:00 P.M. to midnight four days a week and on Sundays from 12:00 A.M. until 8:00 A.M. Although he had assistance from many nurses and nurses' aides, he was the only doctor on duty during those time periods. The State Board for Professional Medical Conduct brought charges alleging gross negligence and/or incompetence on more than one occasion which emanated from petitioner's treatment of four specific patients, two of whom died. Following a hearing, petitioner was found guilty of gross negligence in treatment of two patients, gross incompetence on another patient and of negligence on more than one occasion in his treatment of all four patients; revocation of his license was recommended. These findings were affirmed by the Commissioner of Health, the Regents Review Committee and respondent Board of Regents, and petitioner's license was revoked. In this CPLR article 78 proceeding, petitioner con-

tends that the findings of guilt are not supported by substantial evidence and that revocation of his license is not a fair and reasonable sanction. For the reasons which follow, we disagree and confirm the determination.

The record shows that petitioner failed to recognize that patient A was suffering from diabetic ketoacidosis and that he failed to monitor this patient's fluids, electrolytes, acid-base balance, insulin coverage and glucose values. The patient died the following day. Although, when first seen by petitioner, patient B had extremely low blood pressure, a high pulse, weakness and shortness of breath, petitioner did not order an electrocardiogram or blood studies but instead ordered Robitussin with X rays and consultation for the next morning. This patient died of a myocardial infarction almost immediately after being admitted to the medical surgical unit the following morning by another doctor. Petitioner was found guilty of failing to oversee treatment for patient C who had been diagnosed as having rectal cancer on July 12, 1984. He did not provide for medical care of this patient's gastrointestinal problem from July 28, 1984 until October 1985. Lastly, patient D was brought to the hospital by police in a state of confusion, disorientation, impairment of memory and cognitive functioning, and had a staggering gait. His abdomen and extremities were bruised. These findings were reported to petitioner by a psychiatrist who first saw the patient. Petitioner failed to order a skull X ray, CAT scan or neurological consultation, and instead told the admitting doctor to merely observe the patient every four hours. Two days later the patient was sent to another hospital, where he was diagnosed as suffering from right frontal subdural hematoma requiring surgery.

At the hearing, a medical expert who reviewed the records of the four patients opined that petitioner's practice failed to meet minimum standards of medical practice because he failed to obtain histories and perform necessary testing to determine the condition of patients seen by him in emergency situations and failed to recognize serious emergency conditions or to take effective action. By way of a defense, petitioner and his own expert testified that he was overburdened by the large number of patients and that the minimal care he provided was reasonable under the circumstances prevailing. He sought to place the blame for the inadequate care provided to the four named patients upon others, but offered no proof to show that he was occupied with other patients when these four patients were admitted.

Initially, we reject petitioner's argument that there are no cases which define gross negligence, negligence, gross incompetence or incompetence. This court has sustained such charges on prior occasions *(see, e.g., Matter of D'Amico v Commissioner of Educ. of State of N. Y.,* 167 AD2d 769; *Matter of Hirose v Sobol,* 167 AD2d 570; *Matter of Revici v Commissioner of Educ. of State of N. Y.,* 154 AD2d 797, 799) and has indicated that "gross negligence" requires "egregious" conduct *(see, Matter of Spero v Board of Regents,* 158 AD2d 763, 764; *see also, Matter of Yong-Myun Rho v Ambach,* 74 NY2d 318, 322). The conclusion reached in this case that petitioner's conduct was egregious cannot be said to have been irrational. Petitioner's argument that substantial evidence is lacking distills essentially to the issue of witness credibility. However, determining which witness is believable and the weight to be assigned to witness testimony is vested exclusively in the Board of Regents *(Matter of Prokopiw v Commissioner of Educ.,* 149 AD2d 874, 875, *appeal dismissed* 75 NY2d 809; *Matter of Goomar v Ambach,* 136 AD2d 774, *appeal dismissed* 72 NY2d 908, *lv denied* 73 NY2d 701). It is our view that the proof in this record, including the testimony of the State's expert and the patients' records, provided the substantial evidence required to support the determination.

Finally, we turn away petitioner's argument that the sanction of revocation is unduly harsh and excessive. In our review of the propriety of the penalty, we are restricted to determining only whether the penalty is so incommensurate with the offense as to shock our sense of fairness and conscience *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 223; *Matter of Reisner v Board of Regents,* 142 AD2d 22, 31). Under the circumstances here, given that the death of two patients could be attributed to petitioner's negligence and the serious consequences resulting in the other two patients could be found attributable to his misfeasance, we cannot say that the penalty requires modification *(see, Matter of Spero v Board of Regents, supra,* at 764).

Determination confirmed, and petition dismissed, without costs. Casey, J. P., Weiss, Mercure, Crew III and Harvey, JJ., concur.