■ In the Matter of RENATO TICZON, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [759 NYS2d 586] —Peters, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

On March 21, 2001, the Bureau of Professional Medical Conduct (hereinafter BPMC) filed seven specifications of professional misconduct against petitioner, a licensed internist,

which included allegations of gross negligence, gross incompetence, negligence on more than one occasion, incompetence on more than one occasion and a failure to maintain medical records in relation to his care of 11 patients (hereinafter patients A through K).* Following a seven-day hearing, a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter Committee) ordered that petitioner's license be revoked; this CPLR article 78 proceeding ensued.

Mindful that the standard for reviewing a hearing committee's determination is whether it was supported by substantial evidence (*see Matter of Reddy v State Bd. for Professional Med. Conduct,* 259 AD2d 847, 849 [1999], *lv denied* 93 NY2d 813 [1999]; *Matter of Gandianco v Sobol,* 171 AD2d 965, 967 [1991]), we find that, as to each of the charges sustained, necessary record support is present. Concerning petitioner's allegations of bias, we fail to find sufficient evidence presented to both support the allegation and prove "that the outcome flowed from it" (*Matter of Moss v Chassin,* 209 AD2d 889, 890 [1994], *lv denied* 85 NY2d 805 [1995], *cert denied* 516 US 861 [1995]; *see Matter of Lauersen v Novello,* 293 AD2d 833, 834 [2002]).

Addressing the treatment rendered, patient A entered the hospital with complaints of severe pain in her lower back, hip and extremities, preceded by fever and chills. The Committee found an egregious deviation from accepted standards of care and a repeated disregard or failure to comprehend laboratory results which indicated that her condition was far more serious than petitioner originally perceived. The Committee also determined that petitioner's treatment of patient A rose from simple negligence and incompetence to egregious, life-threatening misconduct when he failed to examine and then timely address her worsening condition, which ultimately required emergent surgical intervention. With testimony from Warren Silverman, the BPMC's expert, supporting the conclusions reached by the Committee, we find that any challenge thereto was a credibility determination which fell squarely within the province of the Committee—a determination which will not be disturbed where, as here, there is ample record support (*see Matter of Reddy v State Bd. for Professional Med. Conduct, supra* at 849-850).

As to patients B, D, E, F and H, the record provides substantial evidence to support the Committee's findings of negligence on more than one occasion, incompetence on more than one occasion and, in some instances, a failure to maintain

---

* No charges were sustained pertaining to patients C, G and I and two charges as to patient F were dismissed.

accurate medical records after these patients were admitted to the hospital and placed under petitioner's care. Patient B ingested approximately 100 tablets of Tylenol on the day before admission in an apparent suicide attempt. The Committee found that petitioner failed to make timely arrangements to speak with a specialist, consult relevant medical literature or arrange for the patient to be transferred to a facility where a liver transplant could occur.

Concerning patient D, admitted with complaints suggesting that he had suffered from a seizure that morning, the Committee found that petitioner failed to either conduct or document an appropriate neurological examination despite the patient's history of seizure disorders. Similarly concerning patient E, who had been petitioner's long-term patient, the Committee concluded that petitioner failed to maintain accurate records and form a required differential diagnosis for his condition despite abnormal laboratory tests. Petitioner also failed to conduct and/or document a physical examination even after a nurse discovered that patient E had developed a hard and distended abdomen, accompanied by bloody urine and complaints of discomfort and burning. Patient F, who had symptoms of chronic alcoholism, was admitted with shortness of breath, nonstop coughing, eye drainage, chest pain, lower abdominal pain and malaise. She left the hospital against medical advice on the following day. The Committee found that petitioner failed to maintain accurate records and to make attempts to dissuade her from leaving or make contact with her family physician.

Patient H, an elderly female, was admitted with complaints of a sudden onset of dizziness, palpitations, unsteadiness and pressure on the left side of her neck. The Committee found that petitioner failed to consult with a cardiologist, negligently attempted to treat her pharmaceutically rather than therapeutically, failed to order necessary tests and prescribed medicine which was clearly contraindicated for her condition. He also failed to maintain accurate medical records by failing to transfer relevant office documentation to her hospital chart. Petitioner's long-term care of patient J, an elderly male, proved to be no different. He was admitted with complaints of a mucus plug blocking his larynx. Here, petitioner failed to document the basis for his diagnosis or perform necessary tests to support his diagnosis. Charges as to patient K, admitted with symptoms of pneumonia, were also sustained by finding that petitioner failed to order intravenous fluid support despite signs of dehydration and failed to prevent administration of a medication which was contraindicated for this patient.

Each of the Committee's findings had substantial record support through some combination of expert testimony, lay testimony and medical record review. Hence, we find no basis upon which we would disturb the determination rendered, despite the existence of evidence to the contrary (*see Matter of Reddy v State Bd. for Professional Med. Conduct*, 259 AD2d 847, 849-850 [1999], *supra*).

Nor do we find that the sanction of revocation was "so disproportionate to the underlying offenses as to be shocking to one's sense of fairness" (*Matter of Hoffman v Village of Sidney*, 252 AD2d 844, 845 [1998]; *see Matter of Richstone v Novello*, 284 AD2d 737, 739 [2001]; *Matter of O'Keefe v State Bd. for Professional Med. Conduct*, 284 AD2d 694, 697 [2001], *lv denied* 96 NY2d 722 [2001]). After considering the pervasive violations of appropriate medical standards and petitioner's continued failure to recognize the extent to which his conduct jeopardized patient care, we confirm the penalty.

Crew III, J.P., Spain, Lahtinen and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.