■ In the Matter of LOUIS A. SIDOTI, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT et al., Respondents. [866 NYS2d 801]—

Spain, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner has been authorized to practice medicine in New York since 1991. In 2006, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner with 19[1] specifications of professional misconduct arising out of his treatment of seven patients (hereinafter patients A through G) in the emergency rooms of Albany Memorial Hospital, Albany Medical Center and St. Peter's Hospital between 2001 and 2004. In particular, petitioner was charged with violations of Education Law § 6530, including practicing medicine with gross negligence (see Education Law § 6530 [4]), practicing with negligence on more than one occasion (see Education Law § 6530 [3]), practicing with gross incompetence (see Education Law § 6530 [6]), and practicing medicine with incompetence on more than one occasion (see Education Law § 6530 [5]) as to patients A, B, C, D, E, F and G. He was also charged with failing to maintain accurate medical records as to patients E, F and G (see Education Law § 6530 [32]).

Following a fact-finding hearing conducted by a Hearing Committee of respondent State Board for Professional Medical Conduct, petitioner was found guilty of each charge of negligence on more than one occasion, gross negligence, and failure to maintain accurate medical records, except for those arising out of his care of patient C. The Hearing Committee further sustained charges against petitioner for gross incompetence and incompetence on more than one occasion relating to his care of patient B, and his medical license was thereafter revoked. Petitioner subsequently filed an appeal with respondent

---

1. Although petitioner was initially charged with 13 specifications of professional misconduct, at the close of its proof at a later fact-finding hearing, the BPMC amended the charges to add additional specifications.

Administrative Review Board for Professional Medical Conduct (hereinafter ARB), which ultimately confirmed the Hearing Committee's findings of professional misconduct and the determination to revoke petitioner's license. Petitioner then commenced the instant CPLR article 78 proceeding in this Court, pursuant to Public Health Law § 230-c, seeking to vacate the determinations of the Hearing Committee and the ARB on the grounds that the revocation of his license to practice medicine violated due process, the findings were arbitrary and capricious and unsupported on the record, and the penalty itself was unduly harsh and excessive.

Given that the "Hearing Committee's determination was reviewed by the ARB . . . , our review is 'limited to ascertaining whether [the ARB's determination] was arbitrary and capricious, affected by error of law or an abuse of discretion' " (*Matter of Insler v State Bd. for Professional Med. Conduct*, 38 AD3d 1095, 1097 [2007], quoting *Matter of Bottros v DeBuono*, 256 AD2d 1034, 1035-1036 [1998]). The ARB's determination "will not be disturbed if it has a rational basis and is factually supported" by the record (*Matter of Solomon v Administrative Review Bd. for Professional Med. Conduct, Dept. of Health*, 303 AD2d 788, 789 [2003], *lv denied* 100 NY2d 505 [2003]; *see Matter of Conteh v Daines*, 52 AD3d 994, 995-996 [2008]). Petitioner challenges both the findings of misconduct and the penalty imposed as lacking a rational basis of record facts.

Turning first to the findings of misconduct based on negligence in connection with petitioner's treatment of patients A, B, D, E, F and G, we concur with the ARB that such findings are amply supported by the record evidence. Testimony from patient E, the father of patient G, and from an emergency room physician and a nurse who worked with petitioner and observed his treatment of patient F provided evidence that petitioner did not conduct physical examinations of those patients, although he indicated that such examinations were conducted in their charts. Further, physician Joseph Braverman, based upon his review of the hospital records of patients A, B, D, E, F and G, the testimony of patient B's father, and the testimony of the other fact witnesses, confirmed petitioner's failure to obtain sufficient patient histories, failure to perform adequate physical examinations, failure to order appropriate diagnostic and laboratory tests, prescription of inappropriate treatments, and misdiagnoses of life-threatening conditions. In the case of each patient, Braverman testified that, under the circumstances presented, these omissions and erroneous treatments constituted deviations from generally accepted standards of medical prac-

tice.[2] This expert testimony, combined with the testimony of the fact witnesses and relevant hospital records, provide a rational basis to sustain the findings involving practicing with negligence (*see Matter of Conteh v Daines*, 52 AD3d at 995-996; *Matter of Ticzon v New York State Dept. of Health*, 305 AD2d 816, 819 [2003]; *Matter of Lewis v DeBuono*, 257 AD2d 787, 788-789 [1999]). The contrary testimony of petitioner and his expert raised credibility determinations for the Hearing Committee and, ultimately, the ARB to resolve (*see Matter of Solomon v Administrative Review Bd. for Professional Med. Conduct, Dept. of Health*, 303 AD2d at 789; *Matter of Saunders v Administrative Review Bd. for Professional Med. Conduct*, 265 AD2d 695, 696 [1999]).

Next, we conclude that the charges against petitioner for gross incompetence and incompetence on more than one occasion relating to his care of patient B were also properly sustained. Patient B, a 15-month-old child, was taken to the emergency department of St. Peter's Hospital by his parents at the instruction of the child's pediatrician who had requested that blood work be completed due to a rash on the child's hands and neck. Although petitioner noted on the child's chart that the rash was consistent with a blood-related abnormality, he did not order blood work. Petitioner instead diagnosed the child with an ear infection and ordered antibiotics to be administered by injection. The injection bled, which, according to expert testimony, is consistent with a patient who has a low platelet count. Nevertheless, petitioner released the child. The next day, at the instruction of the child's pediatrician, the child was rushed to another hospital where blood work indicated that the child's platelet count was dangerously low. In Braverman's opinion, petitioner's failure to order a blood count and other tests prior to discharge, which could have led to the child's death or other serious harm, fell below acceptable standards of care. Given this evidence, we have no basis upon which to disturb any of the ARB's findings against petitioner with re-

---

**2.** Although Braverman's testimony provided compelling evidence that petitioner's actions and his failure to act constituted severe deviations from accepted standards of care for each of these patients, the facts surrounding the charges related to patient A are most telling of the grave consequences of petitioner's conduct. According to the record, patient A presented in the emergency room at Albany Memorial Hospital with severe back pain and vomiting, a history of hypertension, breast cancer and a previous heart attack. Without taking a more detailed history or ordering diagnostic tests, both of which Braverman testified would have been necessary to meet accepted standards of care to rule out a more serious condition, petitioner treated patient A for a lumbar strain and spasm and discharged her. Within two hours, patient A died of cardiac arrest.

spect to patient B (*see Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1252 [2007]; *Matter of Solomon v Administrative Review Bd. for Professional Med. Conduct, Dept. of Health*, 303 AD2d at 789).

Likewise, we conclude that the ARB properly sustained the charges that petitioner failed to maintain accurate medical records as to patients E, F and G. As indicated, testimony from fact witnesses established that petitioner failed to conduct physical examinations of those patients, although he indicated that such examinations where conducted in their charts (*see Matter of Ostad v New York State Dept. of Health*, 40 AD3d at 1252; *Matter of Insler v State Bd. for Professional Med. Conduct*, 38 AD3d at 1098-1099).

We turn next to petitioner's contention that he was penalized for uncharged misconduct and thereby was deprived of due process, asserting that the Hearing Committee improperly relied upon his alleged, but uncharged, fabrication of patient records in formulating his penalty. In reviewing this claim, the ARB acknowledged its power to substitute its judgment for that of the Hearing Committee in deciding upon a penalty (*see Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 90 [1993], *appeal dismissed and lv denied* 83 NY2d 901 [1994]), but nevertheless concluded that the charges properly sustained against petitioner by the Hearing Committee supported its determination to revoke his license. Indeed, the ARB did not sustain the imposed penalty based upon any uncharged conduct. Although the Hearing Committee in its decision stated at one point that petitioner "falsified records," the ARB, while acknowledging that a penalty can only be imposed based on charged conduct, specifically found that the penalty imposed was justified by the conduct charged, and sustained, by the Hearing Committee (*cf. Matter of Dhabuwala v State Bd. for Professional Med. Conduct*, 225 AD2d 209, 213 [1996]). Indeed, the penalty was based on petitioner's repeated failure to provide adequate care to his patients, despite evidence that he often knew what care was necessary, evincing an indifference or lack of insight to the consequences of his actions. The ARB appropriately found that "[t]he lack of insight means that [petitioner] remains at risk to repeat his misconduct."

Finally, we disagree with petitioner that the penalty affirmed by the ARB cannot be sustained. "[A] penalty imposed by the ARB will be modified or annulled only when 'the punishment is so disproportionate in light of the offense that it shocks one's sense of fairness' " (*Matter of Maglione v New York State Dept. of Health*, 9 AD3d 522, 525 [2004], quoting *Matter of Brigham v*

*DeBuono*, 228 AD2d 870, 874 [1996], *lv denied* 89 NY2d 801 [1996]). The ARB considered other penalty options, but concluded "that no lesser penalty will provide adequate protection for patients." Specifically, the ARB concurred with the Hearing Committee's findings that continual supervision would be impractical and monitoring through record would not be effective in that, in some cases, petitioner's patient records did not reveal the inadequacies in the actual care provided. Likewise, petitioner's assertion that he could safely practice medicine outside the emergency room setting, such as in his dermatology practice, is undermined by the record evidence of his gross negligence and incompetence and, specifically, his failure to appropriately diagnose patient B's rash as an indicator of a serious condition (*see Matter of Braick v New York State Dept. of Health*, 13 AD3d 740, 742-743 [2004]). Accordingly, we will not disturb the ARB's conclusion that petitioner's demonstrated lack of insight or remorse, coupled with his persistent failure to conform to accepted medical standards of care, justify revocation of his license to practice medicine (*see Matter of Orens v Novello*, 307 AD2d 392, 393 [2003], *appeal dismissed* 100 NY2d 614 [2003]; *Matter of Ticzon v New York State Dept. of Health*, 305 AD2d at 819; *Matter of Brigham v DeBuono*, 228 AD2d at 874-875; *Matter of Gandianco v Sobol*, 171 AD2d 965, 967 [1991]; *cf. Matter of Bottros v DeBuono*, 256 AD2d at 1036).

We have considered petitioner's remaining contentions and find them without merit.

Lahtinen, Kane, Malone Jr. and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.