■ In the Matter of JOHN WILLIAM SMITH, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH, Respondent. [887 NYS2d 294]—

Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

The Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, a physician practicing in New York City who specialized in plastic surgery, with six specifications of professional misconduct based upon allegations of inappropriate conduct while examining two female patients, patients A and B. With respect to patient A, the amended charge was that while she was being examined for ongoing treatment for a lip laceration in February 2005, petitioner touched her breasts and nipples without any legitimate medical purpose, under the guise of performing a medical examination. An audiotape was admitted into evidence of a telephone call the following day, arranged by an Assistant District Attorney from New York County, from patient A to petitioner; during the call, in response to her questions to him about the incident, petitioner admitted touching her breasts and nipples but claimed he had done so as part of a required test for sensitivity related to her alleged inquiry about a tummy tuck procedure. He also admitted to hugging her and grabbing her, and apologized. Petitioner, in his answer and testimony at the hearing, admitted touching patient A's breasts for nipple sensation, but claimed that he did so only after she inquired about breast augmentation and consequential loss of sensation, an explanation not offered during the phone conversation. The medical experts called by petitioner and BPMC were unanimous that there is no medical reason to touch a patient's breasts in an evaluation for a tummy tuck, which petitioner conceded at the hearing, and that nipple sensation would only be evaluated for breast augmentation surgery. Petitioner's medical records for patient A do not reflect that she inquired about breast augmentation, that he performed a full breast examination, that petitioner took a medical history necessary for such a procedure or that he recorded any result regarding his purported sensitivity test or advised her about the risks.

With respect to patient B, the charge was that in 2002, while patient B was being examined by petitioner in the hospital emergency room prior to her admission for gall bladder surgery by another physician, petitioner asked about her medications. Upon

learning that she was taking a particular psychiatric medicine, petitioner remarked with words to the effect that "you're not going to get horny if you continue with this medication" and "your husband is going to leave you." Later, petitioner entered patient B's hospital room, sat close to her on the bed and, without a medical purpose, told her he needed to examine her nipples. Patient B testified that she refused and shielded herself when petitioner attempted to touch her breasts, which she promptly reported to family members, her surgeon and the hospital. Petitioner denied any inappropriate remarks to or examination of patient B. He testified that patient B asked him in the emergency room if her medicine could affect sex and, after motioning him into her hospital room, asked if they could cause nipple pain, whereupon he asked her if she would like him to examine her breasts, which she declined, and he did not touch her. Patient B denied making any such inquiries of petitioner.

After a hearing held over the course of several months in 2007 before a Hearing Committee of the State Board for Professional Medical Conduct, the Hearing Committee sustained all of the charges and suspended petitioner's license until July 1, 2008, placed him on five years of probation and limited his license to require a chaperone's presence during all patient interactions, and directed that he attend training. Petitioner and BPMC appealed, and the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) sustained the charges, but modified the penalty by revoking petitioner's license. Petitioner commenced this proceeding seeking to annul the ARB's determination and, given that we find no merit to his contentions, we confirm.

Upon review of the record, we do not find that petitioner was denied either due process or a fair hearing. The tape recorded conversation between patient A and petitioner—in which he admitted and attempted to justify touching her nipples—was properly admitted in evidence, as its authenticity and accuracy were established by clear and convincing evidence that it was "genuine and that there has been no tampering with it" (*People v McGee*, 49 NY2d 48, 59 [1979], *cert denied* 446 US 942 [1980]; *see People v Ely*, 68 NY2d 520, 527 [1986]). The foundation for the admission of the tape was provided by the testimony of the Assistant District Attorney who witnessed the conversation and was subject to cross-examination, and petitioner conceded that it was his voice on the tape, which was an accurate recording.

Despite his contentions, it cannot be said that petitioner was denied the right to cross-examine patient A, who did not in fact testify despite BPMC serving two subpoenas on her and repeat-

edly attempting to secure her presence at the hearing; petitioner did not himself ever subpoena patient A (*see* Public Health Law § 230 [10] [c] [4]; State Administrative Procedure Act § 304 [2]; CPLR 2308 [b]; *see also Matter of Conteh v Daines*, 52 AD3d 994, 996 [2008]). To the extent that petitioner's real objection is to the admission of patient A's hearsay statements recorded on the tape, "the Hearing Committee is not bound by traditional rules of evidence" (*Matter of Kosich v New York State Dept. of Health*, 49 AD3d 980, 982 [2008], *appeal dismissed* 10 NY3d 950 [2008]; *see* Public Health Law § 230 [10] [f]). Notably, petitioner was not entitled to the same due process rights afforded to criminal defendants and hearsay is admissible; petitioner had only a limited due process right to cross-examine adverse witnesses (*see Matter of Gordon v Brown*, 84 NY2d 574, 578 [1994]; *Matter of Kosich v New York State Dept. of Health*, 49 AD3d at 982-983). He was given great leeway in impeaching patient A's credibility despite the fact that she did not testify. Given that it was petitioner's own admissions, apologies and explanations during the recorded conversation that furnished the inculpatory evidence against him, and his admission at the hearing that he had engaged in the charged conduct, although for a belatedly offered and undocumented medical reason, his claim that he was denied due process is unavailing (*see Matter of Gordon v Brown*, 84 NY2d at 578; *Matter of Chatelain v New York State Dept. of Health*, 48 AD3d 943, 944 [2008]).

Likewise, we are not persuaded by petitioner's argument that the proceedings were "indelibly tainted" by the opening statement of BPMC's counsel, which referenced an allegation contained in the original statement of charges that petitioner had touched patient A's genitals without a legitimate medical purpose. The original charges were still pending at that time, and that particular allegation—supported by patient A's interview with a nurse investigator—was later withdrawn by BPMC only when patient A failed to appear at the hearing to testify.* The amended charges, which deleted this allegation, were filed in August 2007 during the course of the hearing, and petitioner makes no claim that the amendment itself, which was in his favor, was improper (*see Matter of Kosich v New York State Dept. of Health*, 49 AD3d at 982). We find no merit to his claim that counsel's references caused substantial prejudice, particularly given that the withdrawn allegation was not raised during the hearing and there is no indication in the record that the Hearing Committee or the ARB were influenced by it.

* This particular allegation was not discussed during the recorded telephone conversation.

Finally, petitioner apparently also challenges the adequacy of the evidence supporting the ARB's determination. Mindful that "[c]redibility determinations, including concerning the weight and qualifications of expert witnesses, are matters solely within the province of the administrative factfinder" (*id.* at 984), we find that the ARB's decision is neither arbitrary or capricious nor affected by error of law but, rather, has a rational basis and is factually supported (*see Matter of Conteh v Daines*, 52 AD3d at 995-996). Concerning patient A, the ARB, deferring to the Hearing Committee's factual and credibility findings, concluded that petitioner's own words on the tape and his patient records refuted his testimonial attempt—which the Hearing Committee found to be evasive and to "lack overall credibility"—to explain his inappropriate conduct toward this patient. As to patient B, who was found to be "very credible" and "had nothing to gain by reporting the incident," the ARB found that petitioner's explanations regarding his interaction with this patient "defy logic, common sense and [her] medical history and medical records." Although other witnesses were called to testify, the ARB concluded that none were present during petitioner's interaction with either patient. We do not find that the testimony of the nurse's aide who was present in the hospital room attending to another patient during petitioner's encounter with patient B, indicating that she did not observe or overhear it, refutes patient B's promptly reported account (*see Matter of Wizes v Board of Regents of State of N.Y.*, 34 AD3d 902, 903 [2006]). Petitioner's remaining claims have been reviewed and determined to lack merit.

Mercure, J.P., Malone Jr., Kavanagh and McCarthy, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.