■ In the Matter of STEPHEN M. SHAPIRO, Petitioner, v ADMINISTRATIVE REVIEW BOARD OF THE STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [896 NYS2d 516]—

Cardona, P.J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent which revoked petitioner's license to practice medicine in New York.

Petitioner, a psychiatrist licensed to practice in New York, was charged by the Bureau of Professional Medical Conduct (hereinafter BPMC) with several specifications of misconduct as defined in Education Law § 6530 in relation to his care and treatment of two patients, a wife and husband, patient A and patient B, respectively. Subsequently, a Hearing Committee of the State Board for Professional Medical Conduct conducted a hearing pertaining to the charges. The evidence revealed that petitioner began treating patient B in 1996 for depression and bipolar disorder. After patient B felt that his wife, patient A, might benefit from therapy for her depression, petitioner met with the couple jointly in March 1997 at his home office, allegedly without explaining the potential conflict of interest involved in treating a husband and wife. Thereafter, petitioner treated them both, but at separate appointments. According to patient A, she became infatuated with petitioner shortly after her treat-

ment began and shared those feelings with him. Petitioner's medical records for patient A in November 1997 and January 1998 reflect that patient A had, among other things, "[t]houghts and fantasies" about him. Patient A testified that, shortly after Valentine's Day in 1998, she and petitioner began a sexual relationship that continued until June 2005. She testified that petitioner continued treating her until 2000,* even though he stopped charging her for sessions. In his testimony, petitioner denied having a sexual relationship with patient A.

After the close of proof, the Hearing Committee sustained five of the charged specifications of misconduct, namely, sexual conduct with a patient, moral unfitness to practice medicine, gross negligence, negligence on more than one occasion and failure to maintain accurate records. These conclusions principally stemmed from the findings that petitioner had engaged in a long-term sexual affair with patient A and both patient A and patient B were put at risk because of "the lack of informed consent for treatment of both spouses." The Hearing Committee unanimously determined that petitioner's license to practice medicine should be revoked. Petitioner appealed the determination to respondent with the exception of the charge of inadequate medical records. Respondent confirmed the determination in all respects, resulting in the commencement by petitioner of this CPLR article 78 proceeding.

Inasmuch as the Hearing Committee's determination has been reviewed by respondent, this Court's review is "limited to ascertaining whether [respondent's determination] was arbitrary and capricious, affected by error of law or an abuse of discretion" (*Matter of Sidoti v State Bd. for Professional Med. Conduct*, 55 AD3d 1162, 1164 [2008] [internal quotation marks and citations omitted]; *see Matter of Sundaram v Novello*, 53 AD3d 804, 807 [2008], *lv denied* 11 NY3d 708 [2008]). Notably, respondent's "determination will not be disturbed if it has a rational basis and is factually supported" (*Matter of Arnett v New York State Dept. of Health*, 69 AD3d 1001, 1002 [2010] [internal quotation marks and citations omitted]).

Contrary to petitioner's argument, we find no basis to conclude that, in sustaining the challenged specifications of misconduct, respondent was irrational in relying upon the credibility findings of the Hearing Committee. Notably, the testimonies of both patient A and patient B were evaluated by the Hearing Committee and, despite the fact that they both suf-

---

* Patient B testified that he voluntarily ceased treatment with petitioner in May 2000 because he felt his internist could handle his medications. His wife told him about the affair with petitioner in the fall of 2005.

fered from psychiatric disorders, were found to be both credible and reliable (see generally Matter of Morrison v DeBuono, 255 AD2d 710, 711 [1998]). Patient A gave detailed testimony concerning petitioner's physical characteristics and scars. She also described the specifics of the layout of the private areas of petitioner's home, which were consistent with the observations of a BPMC investigator. The Hearing Committee also found credible the corroborating testimony of two friends of patient A who testified on behalf of the BPMC. They indicated that they learned of the affair almost from its inception, with one of them providing cover stories for patient A so she could rendezvous with petitioner without giving patient B cause to be suspicious.

In contrast, the Hearing Committee found that petitioner was not credible. The Hearing Committee noted that, although petitioner "claimed that he could not have sexual relations with [p]atient A, because he was physically unable to perform," pharmacy records showed he prescribed numerous doses of Viagra for himself during the years 2000 to 2003. Additionally, the Hearing Committee heard a recording of an October 2005 voice mail message that petitioner left for patient A wherein he identified himself as "Steve" and then, in a tone described by the Hearing Committee as "intimate [and] familiar," stated that he "couldn't not talk to [her]" and suggested meeting for coffee and conversation in case she "decide[d] that it might be fun." Although petitioner testified that he called patient A because he had some medical literature he wanted to share with her, the recording, which was provided to this Court, does not mention anything about medical literature. Under all the circumstances, we find no basis to disturb respondent's reliance on the Hearing Committee's resolution of credibility issues in favor of the BPMC's witnesses, nor its final determination (see Matter of Lugo v New York State Dept. of Health, 306 AD2d 766, 767 [2003]; see also Matter of Smith v New York State Dept. of Health, 66 AD3d 1144, 1146-1148 [2009]).

Next, we are unpersuaded that the penalty of revocation of petitioner's medical license was "so disproportionate to the offense that it is shocking to one's sense of fairness" (Matter of Cohen v New York State Dept. of Health, 65 AD3d 791, 793 [2009]). Along with its findings that petitioner lied under oath and failed to appropriately address patient A's infatuation with him and its psychiatric implications, the Hearing Committee found revocation appropriate given, among other things, petitioner's conduct in engaging in a sexual affair with a vulnerable psychiatric patient while at the same time treating her husband for a psychiatric condition. As this Court has noted

previously, "improper sexual contact by a physician toward patients . . . [is] a violation of the fundamental trust in a doctor for which revocation is the appropriate penalty" (*Matter of D'Angelo v State Bd. for Professional Med. Conduct*, 66 AD3d 1154, 1157 [2009] [internal quotation marks and citations omitted]). Thus, we cannot conclude that respondent erred in confirming the Hearing Committee's decision to revoke petitioner's license to practice medicine.

Finally, the remaining issues raised by petitioner, including his claim that certain challenged rulings and remarks by the Administrative Law Judge presiding over the hearing were so prejudicial that they "permeated the underlying proceeding sufficiently to render it unfair" (*Matter of Lauersen v Novello*, 293 AD2d 833, 835 [2002]), have been examined and found to be lacking in merit.

Peters, Spain, Stein and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.