■ In the Matter of MARIA ELENA FODERA, Petitioner, v RICHARD F. DAINES, as Commissioner of Health, Respondent. [925 NYS2d 720]—

Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which, among other things, suspended petitioner's license to practice medicine in New York for two years.

Petitioner, a vascular surgeon licensed to practice medicine in New York, was charged in 2008 by the Bureau of Professional Medical Conduct (hereinafter BPMC) with 17 specifications of professional misconduct in violation of various subdivisions of Education Law § 6530. The charges concerned petitioner's medical treatment of patient A, as well as petitioner's incorrect answers or nondisclosures on applications for appointment and reappointment to the medical staff at two New York City area hospitals and on a registration renewal license application with the Education Department. The nondisclosures concerned adverse action taken by Staten Island University Hospital (hereinafter SIUH) regarding petitioner's medical privileges at that hospital. Following hearings held between June 2008 and January 2009, at which petitioner testified and both parties called witnesses and introduced documentary evidence, a Hearing Committee of the State Board for Professional Medical Conduct dismissed all charges, finding none had been proven. However, the Committee sustained certain factual allegations in the statement of charges related to petitioner's failure to disclose the adverse action taken by SIUH regarding her privileges, finding that these allegations were accurate statements of fact.

At BPMC's request, the Administrative Review Board of Professional Medical Conduct (hereinafter ARB) reviewed the Committee's determination and affirmed the dismissal of all charges related to the fraudulent practice of medicine and to patient A. However, the ARB overturned the Committee's determination on two specifications of charges, which the ARB now sustained, finding that petitioner had committed professional misconduct as defined in Education Law § 6530 (21) by willfully filing false reports on her applications for privileges at two hospitals: St. Vincent Catholic Medical Centers-Staten Island

Division (hereinafter St. Vincent's) and Victory Memorial Hospital (hereinafter Victory Memorial). The ARB determined that petitioner had knowingly failed to inform these hospitals, in her applications for privileges thereat, of ongoing or pending proceedings to suspend her privileges at SIUH. The ARB concluded that the Committee's dismissal of these two charges was inconsistent with the Committee's factual findings demonstrating that petitioner knew that there were such ongoing proceedings at SIUH when she filed her inaccurate applications. The ARB suspended petitioner's license to practice medicine for two years, but stayed the suspension and placed petitioner on probation for five years, under specified terms. Petitioner commenced this CPLR article 78 proceeding seeking to vacate and annul the ARB's determination.

Our review of the ARB's determination overturning the Committee's decision on two charges is limited to whether it was affected by an error of law, arbitrary and capricious or an abuse of discretion (*see Matter of Arnett v New York State Dept. of Health*, 69 AD3d 1001, 1002 [2010], *lv denied* 14 NY3d 707 [2010]), i.e., it will not be disturbed if it is supported by record facts and has a rational basis (*see Matter of Sidoti v State Bd. for Professional Med. Conduct*, 55 AD3d 1162, 1164 [2008]). The Committee made the following findings of fact, as relevant to this proceeding, which the ARB adopted and petitioner does not contest. Petitioner had surgical privileges at SIUH, whose Executive Committee of Medical and Dental staff recommended not renewing in 2002 for various reasons; as SIUH never took action on that recommendation or abided petitioner's request for a hearing to which she was entitled, petitioner's privileges to admit patients and perform surgery continued at that time, undiminished. Consequently, the ARB affirmed the dismissal of all charges related to that recommendation.

However, in February 2004, SIUH sent petitioner notice that it had summarily suspended her privileges for violating restrictions on her clinical privileges. In response, petitioner hired an attorney and formally requested a hearing on that suspension, which was effective immediately. At the initial hearing on that suspension on February 26, 2004—following negotiations—it was agreed on the record that the suspension would be held in abeyance during the hearings and appeal process, i.e., until a final determination, in exchange for petitioner not exercising any of her privileges at SIUH (e.g., admissions, consult, surgery, etc.). An understanding was placed on the record that holding the suspension in abeyance on that day (the 22nd day of her suspension) would obviate petitioner's obligation to report it to

the National Practitioner Data Bank, a duty not triggered until a suspension has been in effect for 30 days. In March 2005, the SIUH Executive Committee notified petitioner that it had unanimously upheld her summary suspension and advised her of her right to appeal to the SIUH Board of Trustees, which right she exercised by letter dated April 5, 2005.

At the heart of the two instant professional misconduct charges upheld by the ARB are petitioner's answers on hospital applications that she subsequently submitted. In May 2005, she submitted an application for reappointment to the medical staff at St. Vincent's, answering "no" to the question "[have] your medical staff appointment or *clinical privileges* ever been terminated, revoked, *suspended,* refused, reduced, limited or not renewed in *any other hospital* or health care institution *or is such action pending*?" (Emphases added.) She also left blank the attached section where "full details" were requested if the question were answered affirmatively. Thereafter, SIUH advised St. Vincent's by letter that petitioner's request for appellate review of the SIUH Executive Committee's decision upholding the summary suspension had not yet occurred and, thus, the agreement (holding the suspension in abeyance in exchange for not exercising privileges) remained in effect until those review procedures were concluded.

Then, in an application for appointment to the medical staff at Victory Memorial in March 2006, petitioner omitted any reference to her affiliation with SIUH and responded "no" to a question inquiring whether her clinical privileges "have . . . ever been, or are . . . *currently in the process of being denied,* revoked, *suspended,* reduced, limited, placed on probation, not renewed, *or voluntarily relinquished,* limited or reduced" (emphases added). Thereafter, in April 2006, the SIUH Board of Trustees notified petitioner that her suspension had been upheld, a final determination for which there was no further right of intrahospital appeal.

Given the foregoing, the ARB's determination to overturn the Committee and sustain the two charges of professional misconduct was fully supported in the record, had a rational basis and was not improvident (*see Matter of Arnett v New York State Dept. of Health,* 69 AD3d at 1002). As the ARB concluded, the Committee's factual findings that, prior to submitting the applications at issue, petitioner (1) was notified by SIUH of its summary suspension, (2) exercised her right to request a hearing thereon, (3) participated with counsel in a hearing at which an agreement was reached for the suspension to be held in abeyance in exchange for her voluntary surrender of all privileges at

SIUH until the ongoing process was completed and a final determination on the suspension rendered, (4) received notice that the SIUH Executive Committee had upheld the suspension, and (5) exercised her right to a final appeal to the SIUH Board of Trustees, together "demonstrated that [she] knew there were ongoing [SIUH suspension] proceedings" when she filed those two applications. The sustained charges for "[w]illfully making or filing a false report" (Education Law § 6530 [21]) required "a knowing, intentional or deliberate act" (*Matter of Brestin v Commissioner of Educ. of State of N.Y.*, 116 AD2d 357, 359 [1986] [interpreting 8 NYCRR 29.1 (b) (6), containing the same phrase as Education Law § 6530 (21) and also applicable to physicians]), i.e., the making or filing of a report with knowledge of its falsity (*see e.g. Matter of Chime v DeBuono*, 260 AD2d 733, 734 [1999]; *Matter of Glassman v Commissioner of Dept. of Health of State of N.Y.*, 208 AD2d 1060, 1061 [1994], *lv denied* 85 NY2d 801 [1995]).*

The ARB was not required to credit or accept petitioner's proffered explanations, excuses or denials regarding her actions, as she now suggests (*see Matter of Glassman v Commissioner of Dept. of Health of State of N.Y.*, 208 AD2d at 1061). Rather, the ARB rationally determined that petitioner deliberately filed the relevant applications, knowing of their falsity. This conclusion is particularly apt given that—at the time the two applications for privileges were submitted falsely attesting that no disciplinary action was pending and no privileges were in the process of being suspended or had been voluntarily relinquished at any hospital—petitioner "was then actively participating in ongoing disciplinary hearings" at SIUH (*Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1253 [2007]). As with other charges of professional misconduct, petitioner's "awareness of the true state of facts at the time [she] gave the false responses was sufficient to support the inference of guilty knowledge" (*Matter of Saldanha v DeBuono*, 256 AD2d 935, 936 [1998]) and "knowledge . . . may be inferred from the surrounding circumstances" (*Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d 927, 929 [2007], *lv denied* 10

---

* Contrary to petitioner's claims, the ARB did not interpret or apply Education Law § 6530 (21) so as to impose strict liability for any filing containing a falsity, and clearly understood that willfulness requires a deliberate or intentional filing with knowledge that the filing contains a falsity. The higher standard governing fraudulent practices—"intent to mislead or deceive" (*Matter of Aptaker v Administrative Review Bd. for Professional Med. Conduct*, 60 AD3d 1160, 1163 [2009], *lv denied* 12 NY3d 713 [2009]; *see Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1253 [2007]; *see also* Education Law § 6530 [2])—is inapplicable here.

NY3d 701 [2008] [internal quotation marks and citation omitted]).

While petitioner testified that she had consulted with counsel regarding how she should answer questions on hospital applications regarding the SIUH suspension proceedings, she admitted that she had not specifically asked counsel how to answer the questions on these two applications (*see Matter of Goldberg v Whalen*, 273 AD2d 551, 554 [2000], *lv denied* 95 NY2d 764 [2000]). Her testimony does not demonstrate that she was misled by counsel or that counsel ever incorrectly advised her that the SIUH suspension proceedings were not "pending" or that her SIUH privileges were not "in the process of being" suspended, reduced or limited, or had not been "voluntarily relinquished." Accordingly, her testimony and proof do not support the challenges now raised to the ARB's determination sustaining these charges.

Finally, we are mindful that "the making of false statements on applications for hospital privileges and to licensing boards has a direct bearing on the applicant's ability to practice medicine" (*Matter of Dolin v State Bd. for Professional Med. Conduct*, 274 AD2d 862, 865 [2000], *lv denied* 95 NY2d 770 [2000]). Upon review, we do not find that the penalty of a stayed two-year suspension with probation is so disproportionate to the offense that it shocks our sense of fairness (*see Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d at 930).

Peters, J.P., McCarthy, Garry and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.