Lahtinen, J.P.
Respondent Hearing Committee of the State Board for Professional Medical Conduct sustained four of eight charges of professional misconduct against petitioner, a physician licensed since 1979 and specializing in addiction medicine. The charges stemmed from his treatment and conduct with patient A, a female in her 20s who had been referred to him by a psychiatrist for treatment of her acute alcohol addiction and related illnesses. Factual findings following a hearing included, among others, that petitioner engaged in frequent phone sex with patient A, sent thousands of text messages to her, many of which were sexually explicit, had repeated inappropriate sexual contact *1118 with her (but not sexual intercourse), actively encouraged her complete dependence on him, and re-established their relationship (including sexual talk and text messaging) in an effort to exert emotional pressure on her after she had reported him (at the urging of another physician) to the Bureau of Professional Medical Conduct (hereinafter BPMC). The Hearing Committee revoked petitioner’s license to practice medicine in New York based upon its determination that he had engaged in conduct evidencing moral unfitness to practice medicine, practiced with incompetence on more than one occasion, failed to maintain records accurately reflecting the care and treatment of patient A, and willfully abused and intimidated patient A. Petitioner commenced this CPLR article 78 proceeding seeking to annul the determination of the Hearing Committee.
Petitioner initially argues that BPMC may have improperly used, in violation of Public Health Law § 230 (11) (a), confidential records that were in the possession of the State of New York’s Committee for Physician Health (hereinafter CPH) regarding petitioner’s treatment many years earlier for his own addiction problem. “[T]he confidentiality provisions of Public Health Law § 230 were intended to encourage professionals and others [including victims] to come forward with complaints of physician misconduct without fear of disclosure in order to ensure that appropriate investigations could be conducted” (Matter of Rowley v New York State Dept. of Health, 3 AD3d 615, 616 [2004]; see Matter of McBarnette v Sobol, 83 NY2d 333, 338 [1994]). Here, petitioner testified on direct examination in support of his own case about his various past struggles with addiction. The disputed information was used as part of cross-examination by the BPMC attorney and the actual records were not introduced into evidence. Petitioner’s contention about the source of the records as being from CPH is speculative and belied by the representation made on the record by the BPMC attorney that the information was from BPMC’s files. Moreover, there is no indication that this line of questioning was important in the Hearing Committee’s determination. Under such circumstances, we are unpersuaded that the use of this information on cross-examination deprived petitioner of a fair hearing.
Similarly unavailing is petitioner’s assertion that he was unduly prejudiced by BPMC’s use of a hearsay document during cross-examination of him. The Hearing Committee is not required to adhere strictly to the rules of evidence (see Public Health Law § 230 [10] [f]) and hearsay evidence may be considered (see Matter of D’Souza v New York State Dept. of Health, 68 AD3d 1562, 1563-1564 [2009]; Matter of St. Lucia v *1119 Novello, 284 AD2d 591, 593 [2001]). The document was not allowed into evidence and its use was apparently limited to credibility or refreshing petitioner’s recollection (cf. Matter of Maxfield v Tofany, 34 AD2d 869, 870 [1970]). The limited use of this hearsay document did not violate the fundamentals of a fair hearing (see Matter of Diamond v Sobol, 145 AD2d 786, 787 [1988]).
Petitioner contends that he should have been permitted to call several patients to testify about the nature and quality of care he provided to them without being required — as ruled by the Administrative Law Judge — to make their medical charts available for inspection by BPMC. He asserts that he did not produce these witnesses out of concern for the confidentiality of their records and that this resulted in prejudice to him. Public Health Law § 230 (10) (1) authorizes BPMC to examine patients’ records as part of an investigation or proceeding. As a component of the statutorily authorized access by BPMC to patients’ records, the statute also imposes strict confidentiality requirements to protect patients and their records (see Public Health Law § 230 [10] [1]; Matter of Murawski, 84 AD2d 496, 499 [1982]). The statute sufficiently covers the confidentiality concerns advanced by petitioner and, under the circumstances, the ruling of the Administrative Law Judge did not deprive petitioner of a fair hearing.
The Hearing Committee’s decision is supported by substantial evidence (see Matter of Block v Ambach, 73 NY2d 323, 335 [1989]). Although the Hearing Committee did not find patient A fully persuasive, it found key parts of her testimony corroborated by other evidence, including telephone records, text messages, letters and petitioner’s own testimony. The Hearing Committee’s credibility determinations regarding experts as well as other witnesses and the weight it gave to such testimony are supported by substantial evidence and, thus, otherwise beyond our limited scope of review (see Matter of Forester v State Bd. for Professional Med. Conduct, 36 AD3d 1127, 1128 [2007], lv denied 8 NY3d 812 [2007]; Matter of Pearl v New York State Bd. for Professional Med. Conduct, 295 AD2d 764, 765 [2002], lv denied 99 NY2d 501 [2002]). Contrary to petitioner’s contention, the record supports the finding that the doctor-patient relationship did not terminate in April 2007 (before some of the more egregious conduct had commenced), but that it continued through much of 2008. During the time that petitioner was treating patient A, the Hearing Committee found and the record supports that his conduct included, in addition to sexual phone calls, texting and touching, failing to take an adequate *1120 medical history of patient A, giving Suboxone to her without appropriate tests, and contacting her in violation of the rules of the in-patient facilities where she was treated. Petitioner also threatened to kill himself if patient A revealed their relationship, and he attempted to manipulate her testimony once professional charges were filed against him.
The standard applicable to our review of the penalty is whether it is “so disproportionate to [the] conduct as to shock one’s sense of fairness” (Matter of Lakner v New York State Dept. of Health, 72 AD3d 1225, 1227 [2010], lv denied 15 NY3d 704 [2010] [internal quotation marks and citation omitted]). Considered under such standard and in light of, among other things, the nature and length of the relationship, as well as the vulnerable emotional and mental health of patient A during the relevant time of the relationship, we cannot conclude that revocation was improper (see Matter of Singh v New York State Dept. of Health Bd. of Professional Med. Conduct, 74 AD3d 1391, 1393-1394 [2010]; Matter of Shapiro v Administrative Review Bd. of the State Bd. for Professional Med. Conduct, 71 AD3d 1241, 1243-1244 [2010]; Matter of Singer v Novello, 288 AD2d 777, 778 [2001]).
Malone Jr., Stein, McCarthy and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.