■ In the Matter of EDDY G. RODRIGUEZ, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT et al., Respondents. [973 NYS2d 464]—

Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Heath Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, a physician specializing in physical medicine and rehabilitation (hereinafter PMR) and licensed to practice medicine in New York since 1974, was charged by the Bureau of Professional Medical Conduct (hereinafter BPMC) in 2011 with seven specifications of professional misconduct. The charges consisted of negligence on more than one occasion, incompetence on more than one occasion and ordering excessive tests not warranted by the condition of the patient, arising out of his treatment of five patients (hereinafter patients A through E) in 2007 following motor vehicle accidents (see Education Law § 6530 [3], [5], [35]). At the hearing before a Hearing Committee of respondent State Board for Professional Medical Conduct, expert testimony was presented of Joseph Feinberg, a physician board certified in PMR, sports medicine and electrodiagnostics, who reviewed, among other materials, petitioner's medical records for these patients. Feinberg testified that, based upon the patients' symptoms, physical examinations and records, petitioner had misdiagnosed patients A, B, C and E with radiculopathy and, as to all five patients, had ordered medical tests that were not warranted by the patients' diagnoses, symptoms or physical examination. Feinberg also opined that petitioner had inappropriately evaluated certain tests as to patients A, B and C. Petitioner testified, asserting that the tests he ordered were appropriate or that his medical records had been forged and that he had not ordered some of the tests in dispute.

The Hearing Committee sustained the charges and recommended revocation of petitioner's medical license. On cross appeals by petitioner and BPMC, respondent Administrative Review Board for Professional Medical Conduct (hereinafter ARB) confirmed the Hearing Committee's findings and determination to revoke petitioner's medical license and denied BPMC's request to impose a fine. Petitioner commenced this CPLR article 78 proceeding in this Court challenging that determination (see Public Health Law § 230-c [5]), raising due process, bias and penalty arguments.

Petitioner was provided with fair notice of the charges and hearing dates, an opportunity to present a defense and a fair hearing that comported with due process (see Matter of Kosich v

*New York State Dept. of Health*, 49 AD3d 980, 981 [2008], *appeal dismissed* 10 NY3d 950 [2008]). The Administrative Law Judge (hereinafter ALJ) did not abuse her discretion in denying petitioner's untimely, last minute request for an adjournment of the agreed-upon second day of the hearing (*see id.* at 982-983; *see also Matter of Rigle v Daines*, 78 AD3d 1249, 1251 [2010], *appeal dismissed* 16 NY3d 825 [2011]). On the first hearing date, March 1, 2011, Feinberg testified on direct examination regarding patient A and, at the end of the day, he was in the midst of cross-examination by petitioner's counsel; the ALJ, parties and Hearing Committee members mutually agreed to three additional hearing dates to complete the testimony, with the second date set for April 13, 2011. The day before that second hearing date, April 12, petitioner's counsel belatedly sent an email[1] to the ALJ (who was in transit) and BPMC's counsel advising—without further explanation—that petitioner was "out of the country," she was "[un]able to contact him" and requesting an adjournment until the next hearing date. When BPMC's counsel immediately opposed the request, petitioner's counsel responded by email that she would "not attend the hearing," offering no legitimate excuse.[2]

The following day, when neither petitioner nor his counsel appeared on the scheduled second day of the hearing, the ALJ denied the requested adjournment, noting that, just that morning, she had received the belated email adjournment request and that counsel had offered no valid reason for her failure to appear on petitioner's behalf. The ALJ proceeded with the second day of hearing, in the absence of petitioner and his counsel, during which Feinberg concluded his testimony and BPMC rested. We discern no error or abuse of discretion, particularly given that no good cause was offered for their absence.[3] Further, the request was untimely in that the notice of hearing had clearly advised petitioner and counsel that any

---

**1.** Counsel also reportedly placed telephone calls to the ALJ and counsel for BPMC, but was not able to speak with either.

**2.** The email from petitioner's counsel stated that she would not subject herself to unspecified "continued abuse" by respondent Department of Health and the ALJ, but did not request an adjournment to allow petitioner to obtain new counsel.

**3.** In an April 18, 2011 communication to the ALJ, petitioner claimed that on April 7, 2011, a week prior to the second hearing date, he went to Haiti due to an unspecified death in his family, but offered no explanation why he did not—at that time—contact his counsel, the ALJ or BPMC to timely request an adjournment. Petitioner's later unsubstantiated claim on administrative appeal that his counsel was ill on the second hearing date was properly rejected as not credible, particularly given that counsel made no mention of any illness in her belated emails requesting an adjournment.

requests for adjournments, among other requirements, had to be made "at least five days prior to the scheduled hearing date," and they were informed at the outset of the first hearing that it could continue in their absence (*see Matter of Kosich v New York State Dept. of Health*, 49 AD3d at 982-983; *Matter of Lawrence v DeBuono*, 251 AD2d 700, 702 [1998]; *Matter of Rodriguez v Chassin*, 235 AD2d 832, 832 [1997]; *Matter of Dorsey v Board of Regents*, 87 AD2d 728, 728 [1982]). Petitioner waived his limited right to cross-examine Feinberg by failing, without good cause, to appear (*see Matter of Kosich v New York State Dept. of Health*, 49 AD3d at 983).

Petitioner's allegations that the ALJ exhibited "clear bias" against his counsel lacks merit, as he fails to set forth any persuasive "factual support demonstrating bias [or] proof that the administrative outcome flowed from [any] such bias" (*Matter of Khan v New York State Dept. of Health*, 17 AD3d 938, 939 [2005]; *see Matter of Chatelain v New York State Dept. of Health*, 48 AD3d 943, 944-945 [2008]). The ALJ's admonishments of counsel were tempered and warranted (and largely made outside the presence of the Hearing Committee members), and her rulings were appropriate; indeed, the ALJ's efforts were properly aimed at redirecting counsel's sometimes disruptive and impertinent behavior, as well as counsel's focus on irrelevant matters and unnecessary and unproductive protraction of the hearings (*see Matter of Lauersen v Novello*, 293 AD2d 833, 835 [2002]).

We also find that, on the first day of the hearing, the ALJ did not abuse her discretion in limiting the cross-examination of Feinberg regarding the adequacy of components of petitioner's physical examination of patient A to matters concerning the misconduct charged (*see Matter of Kosich v New York State Dept. of Health*, 49 AD3d at 983; *Matter of Yoonessi v State Bd. for Professional Med. Conduct*, 2 AD3d 1070, 1072 [2003], *lv denied* 3 NY3d 607 [2004]). Feinberg, relying on petitioner's medical records for each patient, testified on direct examination regarding the content of petitioner's physical examination and documented findings and diagnoses; Feinberg then gave his expert opinion regarding whether, based on the exams performed, the diagnoses made were justified and the tests ordered were indicated or properly evaluated, but did not testify that the exams were improperly or incompletely performed. The misconduct charges, moreover, did not allege that petitioner's examinations of these patients were negligent or insufficient and, thus, the ALJ properly limited the cross-examination to that relevant to the charged misconduct and to the direct

testimony of BPMC's expert testimony (*see Matter of Kosich v New York State Dept. of Health*, 49 AD3d at 983; *Matter of Yoonessi v State Bd. for Professional Med. Conduct*, 2 AD3d at 1072). The ALJ further advised petitioner that if his defense involved the propriety of the physical examinations he performed, he could raise such issues when he presented his defense; he was afforded a full opportunity to so testify and to present relevant proof and call witnesses, including Feinberg, on his behalf. Contrary to his claim, he was not deprived of a fair hearing or the opportunity to present evidence in mitigation (*see* Public Health Law § 230 [10] [c]).

Finally, we are not persuaded that the penalty of license revocation imposed for these sustained charges is so disproportionate to petitioner's pattern of misconduct, as reflected in the ARB's findings, "as to shock one's sense of fairness" (*Matter of Eisenberg v Daines*, 99 AD3d 1117, 1120 [2012] [internal quotation marks and citation omitted]; *see Matter of Sundaram v Novello*, 53 AD3d 804, 808 [2008], *lv denied* 11 NY3d 708 [2008]). The ARB justifiably concluded that exposing patients to unnecessary medical tests, failing to properly diagnose and treat patient pain and medical conditions and demonstrating ignorance of the purpose of medical tests and the meaning of their results, while concomitantly failing to accept responsibility, to admit mistakes or to show remorse, "leaves [petitioner] at risk to continue to commit misconduct and to leave additional [future] patients at risk" (*see Matter of Josifidis v Daines*, 89 AD3d 1257, 1261 [2011], *lv denied* 19 NY3d 801 [2012]; *Matter of Sidoti v State Bd. for Professional Med. Conduct*, 55 AD3d 1162, 1166 [2008]).

Contrary to petitioner's claim, the Hearing Committee did not consider uncharged conduct in making its penalty determination (*see Matter of Block v Ambach*, 73 NY2d 323, 332 [1989]; *Matter of Sidoti v State Bd. for Professional Med. Conduct*, 55 AD3d at 1166). As some of the misconduct charges pertained to ordering excessive tests, Feinberg testified that numerous tests were ordered that were entirely unjustified or useless for the patients' conditions, and petitioner testified as to his billing practices for medical tests.[4] In its determination, the Hearing Committee found that petitioner had ordered a "battery of expensive testing in a uniform manner," which he "knew or should have known were useless" for the patients' conditions,

---

4. Petitioner claimed that several test orders had been falsified, but admitted that he had been aware for two years that the professional corporation that he owned and worked through had falsified test orders yet he continued to practice there.

and that despite his early awareness of "bill tampering," petitioner "continued to profit from the overbilling for nearly three years." While petitioner is correct that overbilling for tests was not charged as misconduct here, we find that this reference did not amount to a penalty for uncharged conduct. Rather, it concerned a relevant finding as to petitioner's motives for the charged misconduct of ordering excessive tests and a rejection of his defense. Further, the ARB did not rely on this finding in affirming the penalty of revocation, and petitioner was not deprived of due process (see Matter of Sidoti v State Bd. for Professional Med. Conduct, 55 AD3d at 1166). Petitioner's remaining claims similarly lack merit.

Rose, J.P., Lahtinen and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.